**SILVER STATE SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**James Chalmers YOUNG, Trustee of the Estate of Carver House, Inc., Bankrupt, Appellee**

No. 15526.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1958.

Samuel S. Lionel, Las Vegas, Nev., for appellant.

Charles W. Deaner, Deaner, Butler & Taylor, Cory, Denton & Smith, Las Vegas, Nev., for appellee.

Before HEALY, LEMMON, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This corporate reorganization proceeding was terminated by an order adjudicating the debtor a bankrupt. It is provided in the order that allowances made to the trustee in reorganization and his attorney "constitute a first lien upon all

the property of the Debtor." Silver State Savings and Loan Association, the principal secured creditor, appeals. Appellant contends that the court should not have given these allowances lien priority over its first and second mortgages.

The debtor, Carver House, Inc., filed a voluntary petition under chapter X of the Bankruptcy Act, on April 18, 1956. The petition was granted ex parte on that day, and Edward J. Price was appointed trustee in reorganization. On that day, Price retained Charles W. Deaner as attorney for the estate. No order authorizing such employment was entered until November 20, 1956.

An exhibit attached to the petition lists as the only assets of the estate a partially-completed hotel in Las Vegas, Nevada, valued at $438,351.26, and land on which the hotel was situated, valued at $45,000. In a trustee's report filed about seven months later, however, the then value of the hotel property was set at approximately $120,000, it being indicated that it would require $150,000 to complete the structure.

The listed liabilities and capital at the time the petition was filed aggregate $483,351.26. Included in these were Silver State's first and second mortgages on the property, given to secure loans totaling $225,000. Accounts payable in the amount of $50,669.11 were partially secured by liens for work performed and material furnished in building the hotel.

The matter of objections to the retention of Price as trustee came on for hearing on July 12, 1956. The court was then told that, because of injuries sustained in an automobile accident, Price would be unable to continue serving as trustee. An order was thereupon entered removing Price as trustee.[1] On July 13, 1956, James Chalmers Young was appointed trustee in reorganization.

The record does not indicate the date on which Young qualified as trustee. Young continued Deaner as attorney for the estate.[2]

In the order approving the petition, it was made the duty of the trustee to file, on or before July 16, 1956, a petition requesting the judge to fix a time within which the trustee should prepare and file a plan, or a report of his reasons why a plan could not be effected, and a subsequent time for a hearing on such plan or report. On July 12, 1956, an order was entered extending the time for filing such a petition to September 17, 1956. This was made necessary by the change in trustee.

No such petition was filed either before or after September 17, 1956. This deficiency was revealed at a hearing which was held on October 4, 1956, presumably for the purpose of considering such a petition. The court therefore decided to proceed on the basis of the trustee's oral request made at that hearing. November 7, 1956, was fixed as the time within which the trustee should file a plan, or reasons why a plan could not be effected.

November 20, 1956, was fixed as the time for a hearing on such plan or report. The order setting these dates also provided that, at the hearing on November 20, 1956, the question of adjudicating the debtor a bankrupt would also be considered. It was further provided that petitions for fees and allowances would be considered at the November 20, 1956, hearing.

At the October 4, 1956, hearing, it came to light that the trustee had not sought and obtained an order prescribing the manner and time within which proofs of claims of creditors, and of the interests of stockholders, may be filed and allowed.[3] The court requested that

---

1. Price rendered no services as trustee, and neither claimed nor received an allowance.

2. Young died after entry of the order here under review, and his executrix, Edith Helen Young, has been substituted as appellee.

3. Such an order is required by sec. 196 of the Bankruptcy Act, 11 U.S.C.A. sec. 596. In this connection, the judge commented that the proceedings had been

the trustee take immediate steps to remedy this omission. Pursuant to this direction, an order was prepared and entered on October 16, 1956, giving creditors and stockholders until November 20, 1956, to file their claims.

On behalf of Silver State, an oral motion was made at the October 4, 1956, hearing, that the debtor be adjudicated a bankrupt. Calling attention to the fact that no notice had been given that the question of bankruptcy would be considered at the October 4, 1956, hearing, the court denied this motion.[4]

On November 1, 1956, Silver State filed a written motion to vacate the order of April 18, 1956, approving the petition, noting it for hearing on November 5, 1956.[5] On November 8, 1956, the trustee filed a report of his reasons why a plan of reorganization could not be effected.

At the hearing held on November 20, 1956, Silver State's motion to vacate, and the trustee's report of reasons why a plan could not be effected, were considered. The matter of allowances could not be considered, however, since the attorney for the trustee had overlooked filing petitions for allowances.[6] This made it necessary to continue the matter of allowances to a future date. Because of this, the court indicated that, while the debtor would be adjudicated a bankrupt, the adjudication would not be formalized until the petitions for allowances were considered. The hearing on allowances was set for December 4, 1956. Silver State's motion to vacate the order approving the petition was denied.

The trustee's petition for compensation in the sum of $1,000, and reimbursement in the sum of forty dollars, was filed on November 23, 1956. Deaner's petition for an allowance in the sum of $800, for services rendered as attorney for the estate, and reimbursement in the sum of forty dollars, was filed on November 27, 1956.

At the hearing held on December 4, 1956, no objection was made to the amount of allowances claimed by the trustee. The court allowed the trustee the full amount claimed. Because the order authorizing Deaner's employment as attorney for the estate had not been entered until November 20, 1956, the court determined that he could be compensated only for services rendered on and after that date.[7] Deaner was therefore allowed $250 of the $800 claimed, plus forty dollars reimbursement for expenses incurred.

The attorney for Silver State vigorously objected, at the December 4, 1956, hearing, to the announced purpose of the court to make allowances a prior lien upon the estate.[8] The position taken by Silver State in this regard was the same as that which was taken by it in First Western Savings & Loan Ass'n v. Anderson, 9 Cir., 252 F.2d 544, also decided today.

Renewal of this objection here presents the only question before us on this appeal.

In the First Western case, referred to above, it was held that where free assets involved in an unsuccessful reorganization proceeding are insufficient

---

going along "in sort of a haphazard way." He properly advised the trustee that it was not the duty of the court to give continuing advice as to what steps should next be taken.

4. See sec. 236, sub. 2, 11 U.S.C.A. sec. 636, sub. 2.

5. The hearing on this motion was later continued to November 20, 1956.

6. The court remarked: " * * * I am disappointed, as I told you, that those

who are entitled to allowances don't have their petitions in."

7. This was pursuant to General Order 44, General Orders in Bankruptcy, 11 U.S. C.A. following sec. 53. See In re National Tool & Mfg. Co., 3 Cir., 209 F.2d 256.

8. The judge had indicated, at the October 4, 1956, hearing, that any allowances awarded would be made a prior burden upon the estate. This purpose may also be implied from remarks made by the judge at the November 20, 1956, hearing.

to cover the allowances, the extent to which mortgaged property should be charged therewith rests within the sound discretion of the trial judge. Several factors which appropriately may be considered in the exercise of this discretion are there set forth.[9]

Here, however, it does not appear that the trial judge took factors of this kind into consideration. The reasons given for rejecting appellant's objection to the lien priority provision were that the objection was not timely made, and that, if such an objection were sustained, Silver State and others interested in the estate "could have the services of an officer of this court entirely without any means of compensating them at all."

The first intimation from the trial judge that allowances would be given lien priority came at the hearing of October 4, 1956. The matter of allowances was not then before the court. The petitions for allowances were filed on November 23 and 27, 1956, but contained no request for lien priority. Appellant's objections were raised at the first and only hearing held to determine allowances—that of December 4, 1956. In making that objection, the attorney for Silver State indicated that he had researched the authorities on the question. This must have required some time. In view of these circumstances, we are of the view that appellant's objection to the lien priority provision was not untimely, and that the objection should not have been overruled for that reason.

The other reason advanced by the trial court—that sustaining the objection would give appellant the service of officers of the court free of charge— seems to have little weight under the facts of this case. It is difficult to see what benefit appellant received, or might reasonably be expected to receive, from the services rendered by the trustee or the attorney for the estate. There was never any reasonable prospect of formulating a plan which would have benefited Silver State or anyone else. The debtor was hopelessly insolvent. There were no funds. The only property was a half-completed hotel which would have required $150,000 to finish.

All of these facts should have been known to the trustee shortly after taking office in July, 1956. He was assisted by an attorney who had been involved in the proceedings from their inception. They both knew that the debtor, which had petitioned for reorganization, had proposed no plan, and had, in fact, withheld its books and records from the trustee.

Yet, instead of proceeding promptly to close out the reorganization proceedings, the trustee and attorney kept them going through a series of hearings. They were responsible for several delays, as recounted above, and had to be prodded into action by the trial court. During the pendency of the proceedings, doors valued at $18,000 were stolen from the building, and, according to Silver State's attorney, deterioration in the value of the property approximated $30,000.[10]

It is therefore seen that, to give the allowances lien priority on the theory that appellant would otherwise receive free services from the trustee and attorney is insupportable on the record. Appellant received no benefit, but only detriment, from their activity in this case.

We conclude that the two grounds on which the lien priority provision is based, as discussed above, do not sustain this provision of the order. Neither takes account of the actual facts of this case, and neither represents an exercise of discretion of the kind defined in the First Western decision, filed today. Appellant is entitled to have the matter of

9. See footnote 8 of the opinion in that case.

10. The formal order fixing allowances and adjudicating bankruptcy is dated December 4, 1956, but was not filed until January 23, 1957. In the meantime, on January 4, 1957, the trustee petitioned for, and obtained, an amendment of the initial order of April 18, 1956, to permit the city of Las Vegas to condemn the hotel property as a nuisance.

lien priority disposed of on the basis of a sound exercise of discretion applied to the established facts of the case.

Reversed and remanded for further proceedings consistent with this opinion.