## In re The NEW ENGLAND CARPET COMPANY, Debtor.

### Bankruptcy No. 81–00138.

United States Bankruptcy Court, D. Vermont.

March 12, 1983.

Charles T. Shea, and Norman C. Williams, of Gravel, Shea & Wright, Burlington, Vt., for debtor.

Joseph C. Palmisano, Barre, Vt., trustee pro se.

Matthew I. Katz, Burlington, Vt., for Merchants Bank.

Bertin C. Emmons, Boston, Mass., for Bank of New England.

Andrew R. Field, Montpelier, Vt., for Vt. Development Credit Corp.

Christopher L. Davis, Burlington, Vt., for unsecured creditors' committee.

Charles E. Gibson, Montpelier, Vt., for Vt. Indus. Development Authority.

## MEMORANDUM AND ORDER ON APPLICATIONS OF ATTORNEYS FOR COMPENSATION AND EXPENSES

CHARLES J. MARRO, Bankruptcy Judge.

Gravel, Shea & Wright, Ltd., as attorneys for the Debtor, and Christopher L. Davis, Esquire, as attorney for the Committee of Unsecured Creditors, have filed Applications for Compensation and Expenses. They seek to have payment made by the secured creditors. Attorney Davis is resting his case on the same basis as the Attorneys for the Debtor. The secured creditors object.

## THE FACTS AND STATEMENT OF THE CASE

The Debtor, The New England Carpet Company, filed its Petition for Reorganization under Chapter 11 of the Bankruptcy Code on June 30, 1981 and it continued to operate its business as a debtor-in-possession. The Schedules attached to the Petition indicate liabilities of $5,250,944.26 (of which more than $4,200,000.00 were secured) and assets of $2,249,933.45. This marked insolvency of the Debtor made it quite clear at the outset that, without a successful reorganization, sufficient funds would not be available for administrative expenses much less for any distribution to unsecured creditors.

On July 14, 1981 the Court approved the Application of Gravel, Shea & Wright, Ltd., as attorney for the Debtor, nunc pro tunc the date of the filing of the Petition for Relief. On April 19, 1982 the Application of the Committee of Unsecured Creditors for the appointment of Christopher L. Davis as attorney for the purpose of submitting a plan of reorganization was approved. Although one was filed on May 12, 1982 it was withdrawn on June 2, 1982.

On July 7, 1981 the Bank of New England (on that date known as "New England Merchants National Bank") filed a Complaint to establish its lien as a secured creditor for relief from stay and for adequate protection. On the same day the Debtor filed an Application for Authorization to use cash collateral which was then subject to the security interests of the Merchants Bank and the Bank of New England. This Petition was resisted and after hearings held July 13 and 14, 1982 and, while the Court held the issues under advisement, the parties submitted a Stipulation in compromise of the various matters raised at the hearings. The Court then entered an Order approving the Stipulation under which the Debtor was permitted to continue in business, use cash collateral but subject to certain conditions which afforded the Bank of New England and the Merchants Bank adequate protection, required the Debtor to adhere to "recovery strategy," and which provided a substitute manner for the Banks to obtain relief from the automatic stay.

The financial condition and the cash flow of the Debtor deteriorated during its period of operation under Chapter 11 and it never did submit a plan of reorganization. Upon the written consent of the Debtor filed July 9, 1982 the proceeding under this chapter was aborted and converted to a Chapter 7 liquidation by Order entered July 14, 1982. Joseph C. Palmisano, Esquire, was appointed trustee.

The Trustee proceeded to liquidate the assets of the Debtor and filed a Complaint to sell them free and clear of liens which came on for hearing, after notice to creditors and the issuance of a Summons and Notice of Trial, on September 21, 1982. The Vermont Development Credit Corporation, the City of Winooski, the Merchants Bank and the Bank of New England as secured creditors refused to consent to the sale and there being no equity in the assets, the Complaint was dismissed. Whereupon, the Trustee filed an Application to disclaim the assets as burdensome and on September 23, 1982 the Court entered an Order authorizing him to disclaim the assets subject to the proviso that the Order was to take effect at the expiration of ten days.

The Merchants Bank, the New England Merchants National Bank, and S.B.I.C. of Vermont, Inc., as secured parties hold security interests in the Debtor's accounts

receivable and inventory, whereas Vermont Development Credit Corporation has a security interest in certain machinery of the Debtor as does Merchants Bank in equipment.

The Trustee has collected certain accounts receivable and liquidated certain assets, but the proceeds received by him are all subject to the security interests of the secured parties.

On September 1, 1982 the Trustee filed a Motion to pay the costs and expenses of preserving the secured property alleging that the secured creditors have a security interest in substantially all of the assets of the Debtor and that there are no other funds available with which to compensate administrative claims arising under §§ 330, 506 or 726 of the Bankruptcy Code. This Motion brought forth an Opposition by the Bank of New England filed October 4, 1982 on the grounds that there was no legal basis for the Trustee's Motion and that it constituted a profound misreading of § 506(c) of the Bankruptcy Reform Act of 1978. The Bank alleged that it never agreed that its collateral could be charged for costs of administration incurred by the Debtor throughout the reorganization proceeding and "in addition, because the bank was accorded super-priority administrative claimant status for any deficiency after liquidation of the collateral, costs and expenses incurred by the Trustee may not be charged against the collateral, as such charges would violate the priorities established by law."

On October 23, 1981 the Attorneys for the Debtor, pursuant to §§ 329, 330 and 331 of the Bankruptcy Code, filed an Application for Interim Compensation for legal services and expenses for the period from June 9, 1981 through October 7, 1981 in the sums of $29,414.50 and $2,226.32, respectively, for a total of $31,640.82. An objection to such an allowance was filed by the then New England Merchants National Bank (now Bank of New England) on the grounds that the Application may not be allowed as a matter of law and, alternatively, that after notice and a hearing the Application be disallowed. No action was taken by the Court on this Application.

The pending Application of the Attorneys for the Debtor for compensation and expenses was filed on August 25, 1982 under which they seek $53,100.00 for 782.6 hours of services rendered from June 9, 1981 through July 30, 1982 at an average hourly rate for members of their law firm who performed the services of $67.86. They also seek reimbursement for expenses of $3,451.32 for a total of $56,551.32. Their request for fees and expenses is predicated on §§ 330 and 506(c) of the Bankruptcy Code and they contend that the secured creditors should bear these expenses as part of the administrative costs since their services were of benefit to the secured creditors and that they consented to the rendering of such services by them as attorneys for the Debtor.

In their Application they list the services performed as benefiting the Debtor's estate and necessary to preserve property securing the secured claims including the following: supervising the preparation of a recovery strategy; the preparation and filing of the Debtor's Application for Authorization to use cash collateral and two days' hearings on such Application; negotiation of a settlement of this Application; representing the Debtor at a meeting of the Creditors' Committee; negotiating an agreement pursuant to § 366 with Vermont Gas Systems, so that the Debtor could continue to operate the factory; negotiating an agreement with a representative of Green Mountain Power for the same purpose; preparing and filing a Complaint for turnover of property against John P. McGuire and Company, resulting in a recovery of $40,348.89 for the benefit of the Debtor's estate; preparing and filing a Complaint for turnover against Benjamin Berman, Inc., resulting in a recovery of $28,500.00 and $15,700.00 worth of carpeting for the Debtor's estate; filing an Amended Complaint for turnover against Country Corner Interiors, resulting in a recovery of $2,676.00; preparing a Complaint and Motion for Temporary Restraining Order against Connecticut General Life Insur-

ance Company preventing it from cancelling insurance policies; representing the Debtor with respect to a Disclosure Statement submitted by S.B.I.C. of Vermont, Inc., and reviewing in detail the Debtor's financial situation as well as continuing negotiations; numerous conferences with the Debtor, prospective purchasers of the Debtor, attorneys for various creditors relative to various attempts to rehabilitate the Debtor and to administer the estate.

The Attorney for the Committee of Unsecured Creditors seeks compensation of $2,178.80 and expenses of $656.63 for a total of $2,835.43. His services were rendered from April 13, 1982 through June 4, 1982 with a total of 22.1 hours at a rate of about $98.55 per hour. All of his efforts related to the preparation of a disclosure statement and the formulation of a plan of reorganization, both of which were later withdrawn.

The Schedules filed with the Petition for Relief show the estimated market value of machinery and equipment at $1,338,399.00, the inventory at $555,000.00, the accounts receivable at $293,202.76, all of which are subject to the security interests of the Vermont Development Credit Corporation and of the Merchants Bank and the Bank of New England. The security interest of the Vermont Development Credit Corporation is in the machinery and equipment, whereas the Merchants Bank and the Bank of New England hold security interests in the inventory and accounts receivable. In addition, the Merchants Bank has a first security interest in certain equipment and a second security interest in all other machinery and equipment. The Bank of New England holds a first security interest in two-thirds of the cash, accounts receivable and inventory, whereas the Merchants Bank holds a one-third security interest in the cash, accounts receivable and inventory.

The Debtor-in-Possession has filed financial statements for the periods from June 30, 1981 through April 30, 1982 which include cash flow reports and statements of accounts receivable and inventory. As of July 31, 1981 the cash flow was $30,433.00 and this decreased to $5,271.00 as of April 30, 1982.

The accounts receivable on June 30, 1981 amounted to $335,068.00 and they diminished to $125,114.00 as of April 30, 1982. The inventory decreased from $476,608.00 on June 30, 1981 to $452,074.00 on April 30, 1982.

Although the Debtor-in-Possession filed no financial statements for any period after April 30, 1982 and the case was converted to straight bankruptcy on July 14, 1982, it is safe to assume that the financial condition of the Debtor deteriorated even more during the ensuing two and one-half months after April 30, 1982 with a resulting decrease in the cash flow, the accounts receivable and the inventory.

The Banks permitted the Debtor to use the cash collateral from the time that the Order was signed by the Court permitting such use on July 24, 1981 and they never applied for relief from stay after that date. The Debtor continued to use the machinery and equipment subject to the security interests of the Vermont Development Credit Corporation and that of the Merchants Bank without objection by these secured creditors and the Vermont Development Credit Corporation never did file a request for relief from automatic stay. It did not participate in any negotiations relative to the reorganization of the Debtor but it did, through its attorney, at a hearing on November 15, 1982 represent to the Court that it did not file for relief from stay because "we had hoped that the Chapter 11 would succeed, and ... quite frankly, we did not want to rock the boat." Vermont Development Credit Corporation was amply secured since there was considerable equity in the machinery and equipment in which it held a security interest.

In a collateral proceeding NEC Realty, Inc., applied for the allowance of rent as an expense of administration for premises occupied by the Debtor in the conduct of its business and at a hearing thereon representations were made by its attorney that the Debtor had failed to pay the balance of the rent due for the month of July, 1981 amounting to $11,970.00. In addition, the

monthly rent reserved in the lease of $15,-970.00 monthly was not paid for June, 1982 and for the period from July 1, 1982 until July 14, 1982 when the proceeding was converted to Chapter 7 liquidation. The lease further provided for the payment by the Debtor of taxes which amounted to $130.00 a day and these have not been paid during the entire period from the date of the filing of the Petition for Relief under Chapter 11 on June 30, 1981 up to the present time.

## DISCUSSION

The Petition of the Attorneys for the Debtor for interim compensation and expenses was filed pursuant to § 331 of the Bankruptcy Code under which a trustee, an examiner, a debtor's attorney or any professional person employed under § 327 or § 1103 of the Code may apply to the Court not more than every 120 days after an order for relief, or more often if the Court permits. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

The Legislative History of this section indicates that its purpose is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances, may be for years. However, the allowance of such interim compensation and expenses is discretionary with the court and may be delayed until all administrative claims are determined and it is ascertained whether proration among such claims is required. *In Re Robin Industries* (Bkrtcy.N.D.Ga.1982) 16 B.R. 695. Further, even though interim compensation is allowed for actual and necessary services rendered, full payment may be withheld since such an award is payment on account subject to the court's reexamination and adjustment. *In Re Pennsylvania Tire & Rubber Company of Mississippi, Inc.* (Bkrtcy.N.D.Ohio 1980) 19 B.R. 124. It is also noted that in the event a Chapter 11 proceeding for reorganization aborts and straight bankruptcy for liquidation ensues, the administration expenses in the Chapter 7 liquidation are entitled to priority of payment over those incurred under Chapter 11. See § 726(b).

When the Attorneys for the Debtor filed their Application for interim compensation and expenses the Court considered its content, the objection of the Bank of New England, the insolvent condition of the Debtor and its cash flow problem. It appeared likely that an effective plan of reorganization could not be implemented and that with straight bankruptcy or dismissal of the proceeding ensuing, there would be insufficient funds not encumbered with which to make payment of administrative expenses. Accordingly, no action was taken on this Application.

The claim of the Attorneys for the Debtor and for the Creditors' Committee for payment of their fees and expenses is predicated upon § 506(c) of the Bankruptcy Code. Under the prior Bankruptcy Act it was generally held that administration expenses, if approved, were to be paid out of the estate of the bankrupt. However, the principle that the estate should bear all costs and expenses was by no means self-evident. 3 A Collier 14th Edition 1398.1—1399 § 62.03. Problems arose when the bankrupt's property was sold free and clear of liens. In such a situation a great number of courts adopted the preferable view that where the lienholder expressly or impliedly consented to a sale free and clear of liens, at least where the sale failed to bring in enough to discharge the lien and the interest thereon in full, the proceeds were made chargeable with the actual costs of sale plus costs reasonably incurred in the preservation of the property and the proportionate share of the administration expenses that were properly attributable to the sale. 4B Collier 14th Edition 1227—1230.

This Circuit has followed the foregoing rule. See *In Re Myers, et al.* (2d Cir.1928) 24 F.2d 349, 351 where the Court said:

"Finally, the mortgagee's share of the lien is not chargeable with the general expenses of administration of the estate, but only with a ratable proportion of the

expenses of sale and of so much else as actually helped to preserve the property or its proceeds. *In re Williams' Estate,* 156 F. 934 (C.C.A.9); *Seaboard Nat. Bank v. Rogers Milk Products Co.,* 21 F.(2d) 414, 417 (C.C.A.2); *Aetna Life Ins. Co. v. Leonard,* 186 F. 148 (C.C.A.5). The amendment of 1910 to section 48d of the Bankruptcy Act (11 USCA § 76) did not affect this rule. *Gugel v. New Orleans Nat. Bank,* 239 F. 676 (C.C.A.5); *Virginia Securities Corp. v. Patrick Orchards,* 20 F.(2d) 78 (C.C.A.4)."

The *Myers* case was subsequently followed in a per curiam opinion in which the Second Circuit affirmed an order charging secured creditors with a pro rata share of expenses in a sale free and clear of liens. See *In Re Rapid Motor Lines, Inc.* (2d Cir. 1964) 325 F.2d 436 in which the Court said, on the authority of *Myers,* that this case did not present an occasion for reappraisal.

The Court may, pursuant to § 330 of the Code, after notice and hearing, allow the Applicants reasonable compensation for actual, necessary services rendered by them based upon the time, the nature, the extent and value of such services. However, at this point the Court is not making any determination of the criteria which would impact on the reasonableness of the compensation requested by the respective attorneys.

As of now the critical issue is whether the holders of the secured claims must bear the costs of attorneys' fees and expenses incurred by the Debtor-in-Possession and by the Committee of Unsecured Creditors in this unsuccessful Chapter 11 reorganization proceeding. If this question is to be determined in the affirmative the Applicants must bring themselves within the purview of § 506(c) of the Code which reads as follows:

"(c) The trustee may recover from property securing an allowed secured claim the reasonable necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

This provision applies equally to a debtor-in-possession. See § 1107 which gives to such an entity the same rights as those of a trustee.

The comments by both the House and Senate Committees as to section 506(c) are identical. They read as follows:

"Subsection (c) also codifies current law by permitting the trustee to recover from property whose value is greater than the sum of the claims secured by a lien on that property that reasonable, necessary costs and expenses of preserving, or disposing of, the property. The recovery is limited to the extent of any benefit to the holder of such claim."

See H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5854, 6313. See also 124 Cong.Rec. H 11,095 (daily ed. Sept. 28, 1978).

Section 506(c) is an exception to the general rule that administrative expenses are payable from the estate of the debtor not subject to liens. Therefore, it is subject to restrictive interpretation. It limits the right of recovery to the trustee or the debtor-in-possession. The Attorneys for the Debtor or the Committee of Unsecured Creditors do not qualify under this section. For a recognition of this disqualification see *In re Codesco, Inc.,* (Bkrtcy.S.D.N.Y.1982) 18 B.R. 225, 230:

"There is another critical flaw in the application submitted by the debtor's non-bankruptcy co-counsel which was not addressed by the parties. Code § 506(c) says: "The trustee may recover ..." The applicants are neither the trustee nor the debtor-in-possession; they are attorneys retained by the debtor-in-possession. In this case neither the erstwhile Chapter 11 debtor-in-possession nor the current Chapter 7 trustee seek a recovery under Code § 506(c) from the secured property, since, as previously indicated, no costs were paid for which recovery could be claimed. The applicants as co-counsel for the debtor are not the proper parties to charge the secured property for their fee

in preserving or disposing of the property to the extent that such conduct allegedly benefitted the lienholder. There is nothing in Code § 506(c) that creates an independent cause of action in favor of the debtor's attorneys against the holders of secured claims or their collateral. Implicit in the basis for recovery is that the costs were paid by the estate and that the debtor-in-possession or the trustee, acting for the estate, is the proper party to seek a recovery under Code § 506(c)."

Even though the Applicants are proper parties to invoke § 506(c) they still are not entitled to recover their compensation and expenses from the secured parties. They argue that the secured parties, by permitting the reorganization plan to continue and also their failure to insist upon relief from automatic stay, at least impliedly consented to the payment of the administration expenses.

As to Vermont Development Credit Corporation they emphasize that there was specific consent when its attorney at a hearing stated that "we had hoped that the Chapter 11 would succeed, and . . . quite frankly, we did not want to rock the boat." This Court is not convinced that there was any consent at all by the secured parties. It is true that all were willing to cooperate with the Debtor in the hope and expectation that a plan of reorganization could be consummated.

It is not unusual in Chapter 11 proceedings for the secured parties to adopt this attitude, especially when the secured party, as in the case of the Merchants Bank and the Bank of New England, had their indebtedness guaranteed 90% by the Small Business Administration. Vermont Development Credit Corporation has as one of its main functions the furnishing of capital to business organizations so as to stimulate industry.

A review of the business operation of the Debtor during the Chapter 11 proceeding clearly indicates that there was no financial benefit to any of the parties involved including the Debtor. The cash flow, the accounts receivable and the inventory all decreased appreciably. An examination of the services rendered by the attorneys discloses that they were almost exclusively for the benefit of the Debtor. There might have been some tertiary benefit bestowed upon the Merchants Bank and the Vermont Development Credit Corporation who held liens on the equipment by its return to them after the termination of the Chapter 11 proceeding. However, the Applicants are still trying to impede repossession by the secured parties by their opposition to abandonment by the Trustee and Application for Stay of the Order of Abandonment and the pending appeal on this Order before the District Court.

Section 506(c) limits recovery for reasonable, necessary costs and expenses of preserving or disposing of property to the extent of any benefit to the holder of a secured claim. Any tertiary benefit received by the secured creditor, especially when he is under-collateralized, is too indefinite and remote to support the allowance of attorney's fees against the property. *In Re Codesco, Inc.*, (Bkrtcy.S.D.N.Y.1982) 18 B.R. 225, 229.

There was no equity in any of the property in which the banks held security interests. On the other hand the value of the secured property upon which Vermont Development Credit Corporation had a lien was much greater than the indebtedness. In view of this it as secured party was in no position to apply for relief from automatic stay and, in a sense, was a captive to the reorganization proceeding. The failure of a secured party to move to lift the automatic stay or to seek adequate protection does not constitute an implied consent to the payment of reasonable expenses of administration. *In Re Fortson* (Bkrtcy.N.D.Ga.1981) 14 B.R. 710.

The Applicants rely heavily on *In Re Hotel Associates,* (Bkrtcy.E.D.Pa.1980) 6 B.R. 108, 2 C.B.C.2d 1162, in support of their position that the holders of the secured claims should bear their fees and expenses and they seem to find solace in the Court's following language at 113, 2 C.B. C.2d at 1169:

"A relaxed liberal interpretation of the wor[d] 'preserving' is necessary here to negate the possibility of the trustee or his agents not being paid after having expended their valuable time in the performance of their court ordered duties."

Their confidence in Hotel Associates is misplaced. In that case the appointment of the trustee was specifically requested by the secured party for the purpose of carrying out duties charged to him under the Chapter 11 proceeding. This request was made in anticipation of the filing of a plan for reorganization by the secured creditor. In addition, the trustee, realizing that there would not be sufficient funds in the estate of the Debtor with which to pay his fees and expenses specifically requested the Court to charge the secured party with these expenses. In sum, there was consent by the secured party to the services to be rendered by the trustee. The Court recognized this when it said at 114, 2 C.B.C. at p. 1169:

"Where, as in the instant case, the sole asset of the debtor is heavily encumbered, and where the holder of the senior secured claim moves the court to appoint a trustee, such creditor has not only impliedly consented to the trustee's costs and expenses, but has insured that those costs and expenses will be incurred. The Fund has clearly decided to 'run a risk of loss' in order to make possible a Chapter 11 plan of its own devising. *In re Riddlesburg Mining Co.,* 224 F.2d 834 (3rd Cir.1955)."

The Merchants Bank, in objecting to the fees of one of the attorneys for the Debtor and in trying to establish that they were not reasonable, elicited testimony that he had not appeared in Bankruptcy Court very often prior to this proceeding and had not been engaged in bankruptcy matters since 1958. However, it must be pointed out that the Attorneys for the Debtor and for the Unsecured Creditors Committee rendered their services in a highly professional manner. Their pleadings revealed that they made themselves thoroughly familiar with the applicable sections of the Bankruptcy Code; they exhibited excellent preparation and handled themselves extremely well in Court. In view of this and in realizing that a person is worthy of his hire, the Court finds it most unpleasant in making this determination that the secured parties should not be charged.

If the Attorneys for the Debtor are to be faulted it is in their failure to make a pragmatic appraisal of the financial condition of the Debtor at the outset, especially in view of its extremely insolvent condition in the bankruptcy sense. They should also have realized that there would not be any estate of the Debtor not encumbered from which their fees and expenses would be paid. They should also have inquired into the availability of the influx of risk capital during the Chapter 11 proceeding. In sum, it appears that they either did not give serious consideration to the probability of a successful reorganization or they were influenced by the strong desire of their client to continue in business at whatever cost.

The services rendered by the Attorney for the Unsecured Creditors' Committee was for the specific purpose of submitting a plan which was later withdrawn. His services were of no benefit whatsoever to the secured parties.

Since all of the assets now held by the Trustee are subject to the security interests of the Banks and Vermont Development Credit Corporation and the secured parties are not being charged with the compensation and expenses of the Applicants the reasonableness of their fees becomes a moot question.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED that the Applications of the Attorneys for the Debtor and of the Committee of Unsecured Creditors are DISMISSED.