738 F.2d 951
 10 Collier Bankr.Cas.2d 1314, Bankr. L. Rep. P 69,935
BROOKFIELD PRODUCTION CREDIT ASSOCIATION, Appellee,
v.
Laverne BORRON and Floy Borron, d/b/a Borron Turkey Farm and
Hatchery, Appellants.
 No. 84-1083.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1984.
Decided July 12, 1984.
 
 Jerome I. Kaskowitz, Deborah A. Weedman, Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, P.C., St. Louis, Mo., for appellants.
 Lloyd A. Palans, Stephen L. Kling, Jr., Gallop, Johnson & Neuman, St. Louis, Mo., for appellee.
 Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 
 
 1
 McMILLIAN, Criminal Judge.
 
 
 2
 Laverne and Floy Borron, d/b/a Borron Turkey Farm and Hatchery (debtors), appeal from a final judgment entered in the District Court[1] for the Eastern District of Missouri affirming the judgment of the bankruptcy court granting Brookfield Production Credit Association (creditor) relief from an automatic stay and finding that debtors were not entitled to the costs and expenses of preserving creditor's collateral. For reversal debtors argue only that the district court erroneously upheld the bankruptcy court's denial of its counterclaim under the Bankruptcy Code, 11 U.S.C. Sec. 506(c), seeking recovery of the costs and expenses of preserving creditor's collateral. For the reasons discussed below, we affirm.
 
 
 3
 The facts in this case are basically undisputed. Debtors primarily operate a turkey farm and hatchery; they also raise cattle and crops. Since 1979 creditor provided the necessary working capital for the operation of debtors' farm because debtors' business operations were no longer profitable. Pursuant to the agreements between the parties, debtors executed and delivered three promissory notes to creditor between April 1981 and September 1981. In addition, debtors executed a security agreement granting creditor a security interest in all crops, turkeys, cattle, machinery, and accounts receivable. These security interests were properly perfected.
 
 
 4
 During 1981 and 1982, the value of the secured collateral decreased without a corresponding decrease in the total debt owed. On February 10, 1982, debtors defaulted on the amounts due to creditor at that time. Contrary to the terms of the financing agreement, debtors applied the proceeds of creditor's collateral to satisfy debts of other creditors. Creditor also learned that some of their collateral (livestock) was actually owned by debtors' son.
 
 
 5
 Creditor instituted foreclosure proceedings against debtors in the Circuit Court of Sullivan County, Missouri, in February 1982. On August 15, 1982, four days before the state court proceeding was scheduled for trial, debtors filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. At the time of the reorganization petition, debtors owed creditor $1,375,171.37. The pending state court foreclosure proceedings were stayed by the filing of the reorganization petition. Creditor filed a complaint with the bankruptcy court seeking, inter alia, relief from the automatic stay. The bankruptcy court considered the reasonable going-concern value of the collateral securing creditor's debt, the amount of unsecured debts owed by debtors and the nature of the relationship between debtors and these unsecured creditors,[2] and the sparse evidence offered by debtors concerning their actual plan for reorganization. The bankruptcy court then concluded that the prognosis for successful reorganization was based upon pure conjecture, In re Borron, No. 82-00192(N) (Bkrtcy.E.D.Mo. Nov. 22, 1982) (order), and that debtors had failed to demonstrate the ability to adequately protect creditor's interest in the collateral, and therefore granted creditor's request for relief from the automatic stay. Finding that debtors failed to ascribe actual expenses to specific items of collateral, the bankruptcy court further denied debtors' request for costs and expenses of preserving creditor's collateral. Id.
 
 
 6
 After careful consideration of the bankruptcy court proceedings, the district court concluded that the bankruptcy court properly denied debtors' counterclaim seeking a declaration that debtors were entitled to an offset pursuant to 11 U.S.C. Sec. 506(c), which "authorized recovery, from property securing an allowed secured claim, of reasonable and necessary costs of preserving such property, to the extent the secured creditor benefits thereby." Brookfield Production Credit Ass'n v. Borron, 36 B.R. 445 at 448 (E.D.Mo.1983).
 
 
 7
 Noting that it was undisputed that the costs expended were both necessary and reasonable, the district court was left to consider whether creditor benefited from such expenditures. Id. at 448. To justify its conclusion that creditor did not so benefit, the court stated:
 
 
 8
 [t]o recover, the debtor-in-possession must expend the funds primarily to benefit the creditor, who must in fact directly benefit from the expenditure. In re Sonoma V., 24 B.R. 600 ( [Bkrtcy.App.Cal]., 9th Cir.1982). Expenses undertaken to improve the position of the debtor-in-possession, although indirectly benefiting the creditor, are not recoverable. In re Codesco, Inc., 18 B.R. 225 ( [Bkrtcy]., S.D.N.Y.1982). Several courts require the debtor-in-possession or trustee to establish a quantifiable, rather than qualitative or speculative, benefit. See, e.g., In re Flagstaff Foodservice Corporation, 29 B.R. 215 ( [Bkrtcy]., S.D.N.Y.1983). In sum, courts construing 506(c) appear to require the debtor-in-possession, who bears the burden of proving benefit, to show that absent the costs expended the property would yield less to the creditor than it does as a result of the expenditure, although the provision does not expressly impose such a requirement. Dozoryst v. First Financial Savings and Loan of Downers Grove, 21 B.R. 392 ( [D.C]., N.D.Ill.1982).
 
 
 9
 In applying this interpretation of "benefit" to the instant case, the Bankruptcy Court balanced recovery against the debtor's independent duty of reasonable care regarding the property in his possession. Ford Motor Credit Company v. Weaver, 680 F.2d 451 (6th Cir.1982); Matter of Halux, 665 F.2d 213 (8th Cir.1981). Cf. In re Codesco, Inc., 18 B.R. 225, 229-230 ( [Bkrtcy.], S.D.N.Y.1982) [" Sec. 506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate."]. The Bankruptcy Court concedes that according to the debtors' original schedules, the value of plaintiff's interest increased, yet notes that the record failed to support the debtors' original valuation. Further, debtors, rather than plaintiff, benefited where the debtors did not apply the proceeds from the livestock maintained to plaintiff's debt. The conclusion that these facts do not support a finding of benefit as Section 506(c) requires is not clearly erroneous.
 
 
 10
 Id. at 7-8.
 
 
 11
 We have reviewed the record and find no error of law or fact on the part of the district court. Accordingly, we affirm on the basis of the district court's well-reasoned opinion. See 8th Cir.R. 14.
 
 
 12
 BRIGHT, Circuit Judge, dissenting.
 
 
 13
 Section 506(c) of the Bankruptcy Reform Act allows the trustee or debtor in possession to recover "from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim" 11 U.S.C. Sec. 506(c) (1982).
 
 
 14
 In adopting the district court's opinion as its own, the court holds that the Borrons may not recover the reasonable and necessary expenses incurred in preserving the collateral because these expenditures did not benefit the creditor. Because I believe that the funds expended by the Borrons benefited the creditor, I dissent.
 
 
 15
 Section 506(c) of the Bankruptcy Reform Act expresses the equitable principle that a "lienholder may be charged with the reasonable costs and expenses incurred by the debtor, debtor in possession or trustee which are required to preserve or dispose of the property subject to the lien to the extent the lienholder derives a benefit therefrom." 3 L. King Collier on Bankruptcy p 506.6, at 506-43 (15th Ed. 1984). See also In the Matter of Trim-X, Inc., 695 F.2d 296, 301 (7th Cir.1982); In re Korupp Associates, Inc., 30 B.R. 659, 661 (Bkrtcy.D.Me. 1983). As the court points out in In re Codesco, Inc., 18 B.R. 225 (Bkrtcy.S.D.N.Y.1982), the rationale underlying this principle is that "the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs." Id. at 230. See also In re AFCO Enterprises, Inc., 35 B.R. 512, 515 (Bkrtcy.D.Utah 1983) (when only secured creditor benefits from trustee's work, he should bear expense). In enacting section 506(c), Congress determined that the trustee or debtor in possession should be allowed to recover reasonable expenses necessary to preserve and dispose of the secured creditor's collateral "to the extent of any benefit to the holder of such [secured] claim." S.Rep. No. 989, 95th Cong.2d Sess. 68, H.R.Rep. No. 595, 95th Cong., 2d Sess. 357, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5854, 6313.
 
 
 16
 As the majority opinion correctly points out, courts that have considered section 506(c) have narrowly interpreted the concept of "benefit" to the secured creditor. To show benefit, the trustee or debtor in possession must demonstrate in quantifiable terms that he has expended funds "which directly protect and preserve the collateral." In re Sonoma V., 24 B.R. 600, 603 (Bkrtcy. 9th Cir.1982). See also In re Korupp Associates, Inc., supra, 30 B.R. at 661; In re Codesco, Inc., supra, 18 B.R. at 229. Unless the trustee or debtor in possession can show that "but for his efforts the sum realizable from the [secured] property would have been less" than it was, he cannot recover expenses under section 506(c). See Dozoryst v. First Financial Savings and Loan Association, 21 B.R. 392, 394 (N.D.Ill.1982).
 
 
 17
 From the time the Borrons filed for bankruptcy until the bankruptcy court granted the creditor relief from the automatic stay, the Borrons expended funds for the care and feeding of the turkeys and livestock. The Borrons filed operating reports with the bankruptcy court indicating that they spent about $100,000 in August and September of 1982, and at the November 2, 1982, bankruptcy hearing they estimated that they had spent in total about $145,000. That these expenditures benefited the creditor cannot be denied. The uncontested evidence indicates that during the pendency of the bankruptcy proceedings the turkeys and livestock increased in value as they increased in weight. Indeed, none of the turkeys were marketable in August 1982, and by November 1982, approximately one-third of them had reached market weight, with the others closer to market weight than they had been in August. Had the creditor obtained immediate possession of the turkeys and livestock in August 1982, it would have borne the cost of feeding and caring for them during this period. Because it did not have to pay these costs, it derived a benefit from the Borrons having done so.
 
 
 18
 In similar cases other courts have allowed recovery of expenses incurred in preserving or improving collateral. In In re AFCO Enterprises, Inc., supra, the court awarded the trustee expenses he incurred in maintaining a resort as a going concern during the pendency of bankruptcy proceedings. 35 B.R. at 517. There, the trustee expended funds for "operating, repairing and managing the facility, advertising and marketing the property for sale, preparing budgets and financial forecasts, evaluating contracts and leases affecting the property, and negotiating with [the secured creditor] and other creditors." Id. at 513. In awarding recovery of expenses under section 506(c), the court noted that "[p]reservation of the going concern value of a business can constitute a benefit to the secured creditor." Id. at 515. Similarly, in In re Hamilton, 18 B.R. 868 (Bkrtcy.D.Colo.1982), the court also determined that the secured creditor derived a benefit from the debtor's postpetition expenditures to preserve and improve the collateral. Id. at 873. In that case, the court allowed the debtor recovery of costs incurred in maintaining, harvesting, and marketing crops. Id. See also In re Jim Kelly Ford of Dundee, Ltd., 14 B.R. 812, 816-17 n. 8 (N.D.Ill.1980); In re Neu-Deli Corp., 19 B.R. 175, 176 (Bkrtcy.S.D.Ala.1982); 3 Collier, supra, p 506.6, at 506-43 to 506-44. Like the expenditures in these cases, the monies expended by the Borrons for the care and feeding of the collateral have inured principally to the benefit of the creditor. In keeping with the equitable principles underlying section 506(c), the creditor should bear the cost of this benefit.
 
 
 19
 In their counterclaim for expenses under section 506(c), the Borrons sought a declaration that they would be entitled to recover expenses incurred in maintaining the collateral to the extent their creditor derived a benefit therefrom. Concededly, they have not provided the court with a specific accounting of expenditures that went to specific items of collateral, and the extent to which those expenditures increased the value of the collateral. But as the Borrons point out in their brief, many of these expenses could not be precisely determined when the bankruptcy court considered their counterclaim for expenses. In any event, despite the absence of a specific accounting of expenses, the record shows that the Borrons expended funds to feed and care for the collateral during the pendency of the bankruptcy proceedings, and that the collateral increased in value as a result of those expenditures.
 
 
 20
 Accordingly, I would reverse the decision of the district court with directions to remand the case to the bankruptcy court for a final accounting. On remand, the Borrons would be required to show that specific postpetition expenses went to specific items of collateral, and to demonstrate the extent to which the value of the collateral increased as a direct result of those expenditures.
 
 
 
 [1]
 The Honorable Roy W. Harper, United States Senior District Judge for the Eastern and Western Districts of Missouri
 
 
 [2]
 The bankruptcy court found that the unsecured creditors were insiders, relatives, affiliates, or other family businesses of debtors. See In re Borron, No. 82-00192(N) (Bkrtcy.E.D.Mo. Nov. 22, 1982) (order)