### In re BAUM'S BOLOGNA, INC., Debtor.

### Bankruptcy No. 82–03216 T.

United States Bankruptcy Court, E.D. Pennsylvania.

July 5, 1985.

Alexander Hemphill, Monteverde, Hemphill, Maschmeyer & Obert, P.C., Philadelphia, Pa., for Monteverde, Hemphill, Maschmeyer and Obert, P.C.

Robert C. Spitzer, Campbell, Spitzer, Davis & Turgeon, Harrisburg, Pa., for Commonwealth National Bank.

### MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The question before us is whether the law firm of Monteverde, Hemphill, Maschmeyer and Obert, P.C., the debtor's attorney, is entitled to recover, pursuant to section 506(c) of the Bankruptcy Code, 11 U.S.C. § 506(c), $35,437.10 for its services rendered and costs expended during the pendency of the debtor's attempted Chapter 11 reorganization. The present application of the debtor's attorney for counsel fees and expenses was filed after the conversion of the debtor's bankruptcy from Chapter 11 to Chapter 7.[1] The debtor's attorney seeks to recover the aforementioned sum of $35,437.10 from liquidation funds held by the Chapter 7 trustee. All of these funds, which substantially exceed $35,437.10, are subject to the perfected security interest of Commonwealth National Bank ("Bank"), which opposes the application of the debtor's attorney and claims entitlement to all of the funds.[2] The debtor's debt to the Bank exceeds the amount of these funds and it is undisputed that there are no other assets of the debtor's estate from which the debtor's attorney

---

1. The debtor's attorney received, prior to the conversion, payments for some of its services rendered and costs expended in representing the debtor (then debtor in possession). These payments are not at issue in the present matter.

2. The question before us also arises in the context of the Bank's petition for distribution of cash collateral and accounts receivable, and the objection thereto by the debtor's attorney. The Bank's petition and the application of the debtor's attorney were heard together.

might seek payment of its counsel fees and expenses. For the following reasons, we determine that the debtor's attorney is not entitled to any recovery in the present matter.[3]

Section 506(c) of the Bankruptcy Code, 11 U.S.C. § 506(c), upon which the debtor's attorney relies, states:

> "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

There is a division of authority as to whether a debtor's attorney has standing to seek recovery under § 506(c). *See* 3 *Collier on Bankruptcy* Paragraph 506.06, at 506–51 (15th ed. 1985). However, because we shall decide against the debtor's attorney on other grounds, we need not decide the standing issue at this time and shall assume *arguendo* that the debtor's attorney does have standing under § 506(c).

Briefly stated, the crux of the debtor's attorney's argument is that the services performed by the debtor's attorney during the Chapter 11 phase of the bankruptcy benefited the Bank within the meaning of § 506(c). Specifically, the debtor's attorney points to two particular matters in which its legal services benefited the Bank. First, it represented the debtor in possession in litigation brought against its client by various unpaid livestock sellers who claimed first priority lien rights in the amount of more than $200,000.00 against the assets of the bankruptcy estate pursuant to the statutory trust provisions of the federal Packers and Stockyards Act, 7 U.S.C. § 181 et seq. The debtor's attorney submits that through its efforts the sellers agreed to settle the protracted litigation for approximately $75,000.00 in first priority lien rights. Because the sellers' lien rights (which were subsequently satisfied from the estate's assets) indisputably had priority over the Bank's security interest in the estate's assets, continues the debtor's attorney, the Bank was benefited in the amount of more than $125,000.00. Second, the debtor's attorney claims that it performed services which perfected the estate's interest in an account receivable of approximately $70,000.00 owing to its client. Apparently, only a portion of the approximately $70,000.00 has actually been paid into the bankruptcy estate. Because of the Bank's priority security interest in all of the remaining assets of the estate, continues the debtor's attorney, the efforts of the debtor's attorney in helping to collect the account receivable directly benefited the Bank.

Although the argument of the debtor's attorney may, at first blush, appear to be persuasive, it must be examined in light of the recognized standards for determining benefit to a secured creditor under § 506(c). It should first be noted that § 506(c), as well as the case law which it codified, is an exception to the traditional general rule that administrative expenses, such as counsel fees and expenses, are not to be charged against secured creditors. *See Matter of Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982). In determining benefit to a secured creditor, it is widely recognized that the services performed (or the costs expended) by an entity invoking § 506(c) must have been undertaken primarily for the benefit of the secured creditor. *Matter of Trim-X, Inc., supra; Brookfield Production Credit Association v. Borron*, 738 F.2d 951, 952 (8th Cir.1984); *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 76 (2nd Cir.1984). It is also recognized that expenses undertaken to improve the position of the debtor in possession, although indirectly benefiting the secured creditor, are not recoverable under § 506(c). *Brookfield Production Credit Association v. Borron, supra; In re Sonoma V*, 24 B.R. 600 (Bankr.9th Cir.1982); *In re Proto-Specialties, Inc.*, 43 B.R. 81 (Bankr.D.Ariz.1984). Further, the benefit

---

3. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

to the secured creditor must be quantifiable, rather than qualitative or speculative. *Brookfield Production Credit Association v. Borron, supra; In re Proto-Specialties, Inc., supra.*

In the present matter, it is clear that the subject services by the debtor's attorney were undertaken primarily to aid its client's Chapter 11 reorganization efforts. The defense against the aforementioned livestock sellers' claims and the efforts to recover the aforementioned account receivable were done for the purpose of preserving and increasing, respectively, the money by which the then debtor in possession was attempting to finance its rehabilitation as a going business concern. These services were not undertaken for the purpose of benefiting the Bank. Any benefit to the Bank as a result of these services was indirect and secondary, at best, to the purpose for which they were undertaken. In this regard, we also note that the recovery of fees and expenses arising from an unsuccessful Chapter 11 reorganization will generally not be allowed under § 506(c). *See,* for example, *In re Flagstaff Foodservice Corp., supra,* at 739 F.2d 76:

> "Such benefits as might be said to have accrued to GECC [the secured creditor] from the attempt to reorganize were incidental to the reorganization efforts and did not fall within the intended scope of section 506(c)."

*Also, see* 3 *Collier on Bankruptcy* Paragraph 506.06, at 506–55 (15th ed. 1985) and *In re Korupp Associates, Inc.,* 30 B.R. 659, 663 (Bankr.D.Maine 1983):

> "Services rendered in the turnover proceeding to regain possession of the seized property were for the benefit of the debtor, for without a successful resolution of that action, the debtor would have been left without any business to reorganize."

We conclude that the foregoing considerations are sufficient to deny recovery to the debtor's attorney under § 506(c). Additionally, however, the debtor's attorney has failed to satisfy its burden of proof that its services resulted in a quantifiable benefit to the Bank. With regard to the livestock sellers' litigation, the debtor's attorney concedes that the sellers' claims were only potential and disputed secured claims. Therefore, the debtor's attorney cannot quantify how much, if any, the Bank benefited by the settlement of these claims. With regard to the debtor's attorney's efforts to collect the account receivable, the debtor's attorney simply provided no evidence to show how much, if any, benefit the Bank received from these efforts nor did it prove that the Bank would have received less absent its efforts. *See In re Modern Mix, Inc.,* 18 B.R. 746 (Bankr.S.D. Ala.1982), where a Chapter 7 trustee was denied recovery under § 506(c) for his unsolicited services in collecting a debtor's accounts receivable.

Finally, the debtor's attorney does not allege that the Bank consented to pay for the aforementioned services performed by the debtor's attorney, and there is no basis in the record for such an allegation. The mere fact that the Bank cooperated with the debtor's attorney in defending against the livestock sellers' claims during a portion of that litigation in no way subjects the Bank to liability under § 506(c). *See In re Flagstaff Foodservice Corp., supra,* at 739 F.2d 77; *Matter of S and S Industries, Inc.,* 30 B.R. 395, 398 (Bankr.E.D.Mich. 1983).

For the foregoing reasons, we conclude that the debtor's attorney is not entitled to any recovery of its counsel fees and expenses under 11 U.S.C. § 506(c) or otherwise.