In re SUMMIT VENTURES, INC., Summit Realty, Inc., Summit of Brownsville Management Inc., Summit Food Services, Inc., Summit Wastewater Company, Inc., Mt. Ascutney Associates, Mt. Ascutney Associates Realty Company, Inc., Summit Water Company, Inc., Robert Trent Jones, Jr. Golf and Conference Center, Debtors.

Bankruptcy Nos. 90–00213
through 90–00221.

United States Bankruptcy Court,
D. Vermont.

July 9, 1991.

A. Bell, and J. Swift, Langrock Sperry & Wool, Burlington, Vt., P. Fine, and S. Manchel, Choate, Hall & Stewart, Boston, Mass., for Joseph A. Grano (Grano).

J. Canney, III, Hull, Webber, Reis & Canney, Interim Trustee, pro se (trustee).

G. Crawford, O'Neil & Crawford, P.C., Burlington, Vt., for Lloyds Bank Plc (Lloyds).

S. Prentice, Burlington, Vt., for Chittenden Trust Co. (Chittenden).

D. Wolinsky, P. Saxer, Saxer, Anderson, Wolinsky and Sunshine, Burlington, Vt., for debtors.

MEMORANDUM OF DECISION ON APPLICATION OF CHAPTER 7 INTERIM TRUSTEE FOR AN EMERGENCY BORROWING ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

We are asked, in this matter,[1] to decide between two competing superpriorities; namely, whether superseding Chapter 7 administrative expenses should be paid in full before priority administrative claims in

---

1. We have subject matter jurisdiction under 28 U.S.C. § 1334(b) and the general reference to this Court under VLBR 7012, Part V of the, United States District Court Rules for the District of Vermont. This is a contested matter under Rules of Practice and Procedure in Bankruptcy Rule 9014 and we determine it is core under 28 U.S.C. §§ 157(b)(2)(A), (D), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. Rule 52, as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

the superseded Chapter 11 case. For policy reasons, we hold that the Chapter 7 administrative expenses prevail over Chapter 11 priority expenses.

On April 27, 1990, Debtors filed petitions for relief under Chapter 11, 11 U.S.C. §§ 101 *et seq.*, and operated as debtors in possession under 11 U.S.C. §§ 1107(a) and 1108, until their conversion to Chapter 7 cases on April 12, 1991.

Trustee triggered this matter, on April 17, 1991, by filing an application for an emergency order to borrow $35,000 from Debtors' secured lenders, Lloyds and Chittenden.[2] Trustee's application pleads for the preservation and protection of Debtors' physical property. Pertinent terms of the application include:

> [Trustee's] obligations to Lenders [Lloyds and Chittenden] under the Borrowing Arrangement shall have priority in payment over any other obligations now in existence or hereafter incurred by

2. Chittenden and Lloyds (Lenders) hold "purported" senior mortgages on the property of Debtor Mt. Ascutney Associates, L.P. The senior mortgages are challenged by Trustee and others in a related adversary proceeding to this case.

3. 11 U.S.C. § 503, **Allowance of administrative expenses,** provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expense of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
> (B) any tax—
> (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or
> (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and
> (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;
> (2) compensation and reimbursement awarded under section 330(a) of this title;
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4)....
> (4) reasonable compensation for professional services rendered by an attorney or an accountant....

[Trustee] and over all administrative expenses or charges against property pursuant to 11 U.S.C. §§ 503(b),[3] 506(c),[4] 507(a) and 507(b),[5] except for the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a).

As security for all of [Trustee's] obligations to Lenders under the Borrowing Arrangement, the Lenders will be granted a first security interest in all of the now existing or hereafter acquired property or assets of the [Debtors'] Estates, subject to avoidance by [Trustee].

Trustee's Memorandum of Law in Support of Application, pp. 2–3.

Grano, Debtors' post-petition Chapter 11 operating lender, and one of Debtors' principals, objects to Trustee's application on the ground it "derogates from the rights vested in [Grano]," under the following provision of Debtors' Chapter 11 "Fifth Order for Authority to Borrow Operating Funds."

> (5) reasonable compensation for services rendered by an indenture trustee....
> (6) the fees and mileage payable under chapter 119 of title 28.

4. 11 U.S.C. § 506, **Determination of secured status,** provides in pertinent part:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

5. 11 U.S.C. § 507, **Priorities,** provides in pertinent parts:

> (a) The following expenses and claims have priority in the following order:
> (1) First, administrative expenses allowed under section 503(b) of this title, and any fees assessed against the estate under chapter 123 of title 28.
>
> .     .     .     .     .
>
> (b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

To secure said borrowings, pursuant to 11 U.S.C. Sections 364(c)(1), (2) and (3),[6] [Grano] shall be, and hereby is, granted (a) a first lien on all property of the Debtors' estates which is not otherwise subject to a lien; together with a junior lien on all property of the Debtors' estates that is subject to a lien and (b) priority over any and all administrative expenses of the kind specified in 11 U.S.C. § 503(b) or § 507(b).

Debtors' Fifth Borrowing Order (footnote ours). Grano claims the advances are deemed perfected for all purposes under Debtors' Fifth Borrowing Order.

Because of the undisputed and obvious need for immediate cash, we granted Trustee's application, on April 19, 1991. We ordered, however, our approval of the application was subject to resolution of the conflict between the Chapter 11 priority and liens granted to Grano under § 364(c) and: (1) the priority afforded to superseding Chapter 7 administrative expenses under 11 U.S.C. § 726(b);[7] and, (2) the surcharge against liened property that Trustee seeks.

## ARGUMENTS OF THE PARTIES

1. Pre- and Post-Conversion Administrative Expenses.

Trustee reminds us Grano holds a first lien on Debtors' property, not otherwise subject to a lien and a junior lien. Trustee's application, if approved, will give Lenders a first security interest in all of the now existing or hereafter acquired property or assets of Debtors, subject only to the valid liens on Debtors' assets, not subject to Trustee's avoidance powers.

Trustee says Grano's rights granted under Debtors' Fifth Borrowing Order will not be derogated by its application because superpriority Chapter 7 claims take precedent over superpriority Chapter 11 claims under 11 U.S.C. § 726(b).

Grano acknowledges that § 726(b) gives Chapter 7 administrative expenses priority over Chapter 11 administrative expenses; however, "a superpriority granted for funds advanced under section 364(c)(1) should be given priority over all section 503(b) administrative expenses and over all section 507(b) superpriority expenses irrespective of whether they arise in a Chapter 11 or superseding Chapter 7 case." Grano's Memorandum of Law in Opposition to Interim Trustee's Application, pg. 5 (underscore in original).

Grano says a § 364(c) superpriority will prime a superpriority obtained under § 507(b), "as well as superceding Chapter 7 administrative expenses arising under section 503(b) to the extent section 726(b) gives them priority over Chapter 11 administrative expenses." Id., at pg. 6.

Moreover, Grano argues Debtors' Fifth Borrowing Order granted a perfected secured status on advances that this Court should continue to honor irrespective of pre- or post-conversion administrative expenses. Otherwise, says Grano, "it is unlikely that lenders would have any greater incentive to lend under either sections

---

6. 11 U.S.C. § 364, **Obtaining credit,** provides in pertinent part:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1) with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

7. 11 U.S.C. § 726(b), **Distribution of property of the estate,** provides:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6)[,] or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112[,] 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

364(c) or (d) if their loans could then be primed by any claims other than those meeting the stringent standards of section 506(c) or 364(d)." *Id.,* at pg. 8.

2. Section 506(c).

Trustee says the contemplated Chapter 7 borrowing from Lenders fulfills its duty to preserve Debtors' property.[8] If Trustee had funds on hand and did not need to borrow from Lenders, Trustee could expend such funds and then surcharge Debtors' property under § 506(c), subject to the liens granted Grano under Debtors' Fifth Borrowing Order.

Trustee also argues its application does not affect Grano's rights because the "liens to be received by [Lenders] neither prime nor dilute the liens granted under the Fifth [Borrowing] Order. Grano's interest does not require adequate protection." Trustee's Memorandum of Law in Support of Application, pg. 4.

Grano counters that Trustee's application fails to meet the evidentiary burden of proof needed for priority under § 506(c). Moreover, and although not articulated by Trustee, Grano asserts Trustee's application fails as a priming lien under § 364(d),[9] because there is no evidence Trustee is unable to obtain credit on any other basis, nor has Trustee established how the current lienholders, including Grano, will be adequately protected.

## DISCUSSION

There are six kinds of claims that are entitled to a § 503(b) administrative expense status upon a judicial determination, after notice and a hearing. Ordinarily, § 503(b) administrative expenses, along with fees and charges assessed against the estate under Chapter 123 of Title 28, are afforded a first priority under § 507(a)(1).

Section 507(b) grants a superpriority over § 507(a) priority claims where a secured creditor has been provided adequate protection under §§ 362, 363, or 364, but only to the extent protection proves inadequate. An examination of Grano's § 507(b) priority is not at issue here because any lack of adequate protection cannot be determined until Debtors' property is sold. With the liens not implicated here, we move onto § 726 [10] and whether Trustee's Chapter 7 administrative expenses rank in priority above the superseded Chapter 11 administrative claims.

Section 726(b) determines the distribution of estate property. It requires payments of the claims specified in § 507 or § 726 to be made *pro rata* among the respective claims.

Apart from the superpriority § 726(b) offers for "burial expenses," [11] § 364 allows a debtor in possession to grant superpriority status to creditors who lend during the Chapter 11 case. *See,* §§ 364(a),[12] (b),[13]

---

8. *See, e.g., Matter of Ferkauf, Inc.,* 42 B.R. 852, 860 (Bkrtcy.S.D.N.Y.1984) ("It is the duty of the Trustee to preserve the assets of the estate and to expedite the liquidation and disbursements of those assets.").

9. 11 U.S.C. § 364(d) provides:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

10. For a recent discussion that summarizes the leading cases on § 726(b) adequate protection, *see, In re California Devices, Inc.,* 126 B.R. 82 (Bkrtcy.N.D.Cal.1991).

11. "Burial expenses" is bankruptcy jargon that describes the expenses necessary to wind-up a converted Chapter 11 case.

12. 11 U.S.C. § 364, **Obtaining credit,** provides in pertinent part:

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1008, 1304, 1203, or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

13. 11 U.S.C. § 364(b) provides:

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit

(c),[14] and (d).[15]

Section 726(b) also provides an exception to its own priority distribution of estate property; namely, priority is given to Chapter 7 § 503(b) administrative expenses over pre-conversion allowed administrative expenses. *See, e.g., In re The New England Carpet Company*, 28 B.R. 766, 770 (Bkrtcy.D.Vt.1983) (Court took no action on debtor's attorney's Chapter 11 application for § 331 interim compensation because it appeared reorganization was unlikely and "in the event a Chapter 11 proceeding for reorganization aborts and straight bankruptcy for liquidation ensues, the administration expenses in the Chapter 7 liquidation are entitled to priority of payment over those incurred under Chapter 11."), affirmed on other grounds, *Gravel, Shea & Wright, Ltd. v. Bank of New England (In re The New England Carpet Company)*, 38 B.R. 703 (D.Vt.1983), *affirmed, Gravel, Shea & Wright, Ltd. v. Bank of New England (In re The New England Carpet Company)*, 744 F.2d 16 (2d Cir.1984); *In re Samoa Airlines, Inc.*, 70 B.R. 352, 356 (Bkrtcy.D.Ha.1987) ("Pursuant to 11 U.S.C. Section 726(b), the administrative expenses of a Chapter 7 case take precedence over the administrative expenses of a superseded Chapter 11 case."); *In re Codesco, Inc.*, 15 B.R. 354, 355 (Bkrtcy.S.D.N.Y.1981) (*Codesco I*) (same).

The Court in *In re Codesco, Inc.*, 18 B.R. 225 (Bkrtcy.S.D.N.Y.1982) (*Codesco II*) elaborated:

> The superpriority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negated if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case.

*Id.*, 18 B.R. at 227. *See, In re Energy Co-op, Inc.*, 55 B.R. 957, 968 (Bkrtcy.N.D.Ill.

1985) (Chapter 7 applicant's allowed fees takes precedence over Chapter 11 applicant's allowed fees). *But see, Huisinga v. Carter (In re Juhl Enterprises, Inc.)*, 921 F.2d 800, 803 (8th Cir.1990) (§ 726(b) does not subordinate quarterly fee payments of the U.S. Trustee to Chapter 7 administrative expenses).

Grano's Fifth Borrowing Order was obtained under the authority of § 364(c). The adequate protection issue under § 507(b) is yet to be determined. Grano has a § 364(c) superpriority. *See*, Debtors' Fifth Borrowing Order. The question now becomes, what is Grano's § 364(c) superpriority status upon conversion from Chapter 11 to Chapter 7? *Colliers* frames the issue from one perspective. *Colliers* explains the superpriority problem between Chapter 7 administrative expenses and §§ 507(b) and 364(c) as follows:

> While it is clear from the language of the Code that (1) in a chapter 11 case, section 364(c) and section 507(b) claims have priority over other administrative claims, and (2) in a chapter 7 case converted from chapter 11, the chapter 7 administrative expenses have priority over the chapter 11 administrative expenses arising under section 507(a)(1), it is not clear whether the chapter 7 administrative expenses also take priority over section 364(c) and section 507(b) claims. From the structure of the Code, the superpriorities should prevail because:
>
> 1. Section 507(b) and section 364(c) provide for priority over all section 507(a)(1) and section 503 claims.
>
> 2. The administrative expenses incurred following the conversion of a case from chapter 11 to chapter 7 are section 507(a)(1) and section 503 claims.
>
> 3. Another result could make it difficult or impossible to obtain financing under section 364 for a chapter 11 debtor in possession.

3 *Colliers on Bankruptcy*, ¶ 507.05, pp. 507–45 (15th Ed.1991) (footnote omitted).

**14.** 11 U.S.C. § 364(c), footnote 6, *supra*.

**15.** 11 U.S.C. § 364(d), footnote 9, *supra*.

or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

Trustee's perspective is that the plain language of § 726(b) affords priority to administrative expenses, the so-called "burial expenses," to provide incentive to trustees, professionals, and others to act in a superceding Chapter 7 case. *See, e.g., In re Codesco,* 18 B.R. 225 (Bkrtcy.S.D.N.Y. 1982).

 Both positions have merit. The former encourages creditor financing to the Chapter 11 debtor. The latter ensures a complete administration of the converted Chapter 7 case. As between these two competing superpriorities, we are convinced that policy reasons favor granting the greater priority to the Chapter 7 administrative expenses. A present need to administer a Chapter 7 case is always greater than the past, and also mooted, need of the failed Chapter 11.

We do not decide the § 506(c) issue for several reasons. First, the granting of the § 726(b) priority negates the issue. Second, Trustee has not produced evidence to satisfy a § 506(c) surcharge.

To prevail under § 506(c), a trustee must establish the following elements: (1) the purpose for the costs and expenses is necessary to preserve or dispose the collateral; (2) the costs and expenses are reasonable as measured against the amount of costs and expenses that would have been incurred by the holder of a secured claim in the property; and, (3) the extent of any direct benefit to the holder of the secured claim. *New England Carpet, supra,* 28 B.R. at 772 (Bkrtcy.D.Vt.1983). *Accord, General Electric Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.),* 762 F.2d 10, 12 (2d Cir.1985) (*Flagstaff II,* citing, *Brookfield Production Credit Association v. Borron,* 738 F.2d 951, 952–53 (8th Cir. 1984) (*quoting, Brookfield Production Credit Association v. Borron,* 36 B.R. 445, 448 (E.D.Mo.1983)); *General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 76–77 (2d Cir.1984) (*Flagstaff I, citing Matter of Trim-X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982), and *declining to follow In re Callister,* 15 B.R. 521 (Bkrtcy.D.Utah 1981), *appeal dismissed,* 673 F.2d 305 (10th Cir.1982)); *In re Korupp Associates, Inc.,* 30 B.R. 659, 661 (Bkrtcy.D.Me.1983) (*citing, Sells v. Sonoma V (In re Sonoma),* 24 B.R. 600, 603 (Bkrtcy. 9th Cir. BAP 1982).

We have no doubt Trustee seeks the requested funds to preserve estate property. But without evidence on the other two elements, our educated conjecture is not a F.R.Civ.P. 52 finding. *Compare, In re Becker Industries Corporation,* 89 B.R. 336, 342–343 (S.D.N.Y.1988) (District Court reversed Bankruptcy Court's § 506(c) assessment of trustee's costs and expenses for preservation of assets against secured lenders for lack of evidence on 506(c) elements.)

Trustee is to settle an Order in accordance with this Memorandum of Decision.