**In re SONOMA V, a California general partnership, Debtor.**

**Marilou Cotchett SELLS, Robert Sells, Dorothy and Russell Fields, Appellants,**

v.

**SONOMA V, Appellee.**

**BAP No. NC–81–1168–VEK.**

**Bankruptcy No. 1–80–00463.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Jan. 20, 1982.

Decided Oct. 1, 1982.

Joseph D. Geller, Geller & Holt, Burlingame, Cal., for appellant.

Malcolm A. Misuraca, Misuraca, Beyers & Costin, Santa Rosa, Cal., for appellee.

## OPINION

Before VOLINN, ELLIOTT and KATZ, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

### I. ISSUE

The Sells and Fields appeal an order of the trial court awarding, as an administrative expense, $60,000 in interim attorneys' fees to the firm of Misuraca, Costin & Byers, which fees are to be paid from the proceeds of a sale of the debtor's primary asset, an uncompleted shopping center in Sonoma County, California. We REVERSE.

Appellants hold a $250,000 note from Sonoma V which is secured by a deed of trust on the shopping center. Their lien has been transferred to the proceeds of the sale. Appellants assert that appellees are not entitled to be paid from the proceeds of the sale until their lien claim is satisfied and that the services of appellees did not preserve or dispose of property in which they had an interest within the meaning of 11 U.S.C. § 506(c).

Appellee contends that the sale is pursuant to a plan of reorganization which places expenses of administration in a position of first priority. Further, that since appellee's services brought about the invalidity of a lien which was prior to that of appellants, a benefit was conferred on appellants within the meaning of § 506(c).

### II. FACTS

On May 12, 1981, the trial court confirmed a plan of reorganization proposed by a creditor, Rockefeller Center Construction Corporation (hereinafter RCCC). RCCC claimed a contractor's or mechanic's lien which was ultimately contested and defeated by the debtor. It was essentially a liquidation plan. Pursuant to this plan, classes with ostensible relative priority were designated, costs of administration as defined in §§ 507(a)(1) and 503(b) having been given first priority ahead of other classes consisting of individual lien claimants and prior claims.

Article III of the Plan is entitled "Treatment Of Claims That Are Impaired Under The Plan". In pertinent part it provides:

"3. From the Reorganization Fund there shall be paid in full the claims of creditors in classes A, B, C, D, E, F, G, H, I and J ...

4. No payment will be made to any claimant in any class until claims have been paid in full in accordance with paragraph 3 of this Article III with respect to each claim in any more senior class. For purposes of this Article III, the seniority of classes shall be as their designations appear alphabetically.

5. Upon payment of the claims of all creditors, any amounts remaining in the Reorganization Fund shall be distributed to the debtor."

It is difficult to understand why lien creditors who are to be paid in full are "impaired." Since it appears that the plan provided that the shopping center would be sold for an amount which would satisfy in full the claims of all creditors in classes A through H (appellants were Class F), designation of priorities serves no real purpose. It would not matter to a creditor in a class accepting the plan what the priorities might be so long as the class was fully paid.

The sale which was proposed and subsequently confirmed on May 27, 1981, for some $2,500,000, did not provide enough money to satisfy all classes of lien claimants. This was recognized by all concerned, including appellees who objected to the sale on behalf of the debtor. At the time of the fee hearing approximately $360,000 remained after payment in excess of $2,000,-000 to clear the first two deeds of trust and expenses of sale. The court, taking into account the shortfall for clearing liens, required that RCCC, which claimed a mechanic's lien of some $400,000, and appellants, who claimed under a deed of trust some $250,000, stipulate to a sale free and clear of liens, with their liens to be transferred to the proceeds. This condition to sale was made in open court and was known to appellees. The stipulation signed by Rockefeller and appellants and *the trustee* provid-

ed that their liens "shall attach to the net proceeds of such sale subject to costs of administration *incurred by said trustee* in connection with such sale, including the real estate commission . . . ." (Emph. added). This stipulation was approved by order of the court June 17, 1981 and filed on that date.

## III. ENTITLEMENT TO PAYMENT UNDER THE PLAN

The order approving interim payment of administrative expenses to appellee provides that they shall be paid "pursuant to the plan of reorganization previously adopted by the Court under Class A of the Plan." It is clear that the fundamental premise underlying the plan was that the sale would generate sufficient funds to pay all lien claimants as well as administrative costs. When the court confirmed the sale for less than that amount and required a stipulation from two junior lienholders (RCCC and appellants) whose claims might be impaired, it implicitly modified or abandoned the fundamental premise of the plan—that various designated classes of creditors be paid in full. The case simply became a liquidation proceeding for the best price possible. The priority of the various claims now remain to be determined under general legal standards together with applicable provisions of the Bankruptcy Code.

Appellees contend that the stipulation for sale and the sale which was approved thereon, in effect, merely modified the Plan. Aside from modification not having been affected in conformity with the statute, 11 U.S.C. 1127, the basic conditions for payment under the Plan could not be effected, since the sale and the stipulation substantially and irretrievably rendered the Plan impossible of performance according to its terms.

It may be contended that the disclosure statement, in effect, provided that in the event of a shortfall, distribution would nevertheless be in accordance with the priorities of the Plan. Assuming validity of this contention, the court did not see it that way. If such a contention were correct,

then it would not have been necessary for the court to require two classes, appellants and RCCC, to agree to the sale by specific stipulation. Such consent would not have been necessary if a reading of the Plan permitted such a shortfall. Once the stipulation was entered into and approved by the court, appellee's contention that they were not aware of its contents misses the mark, since requirement of consent evidenced the court's perspective that the sale in question was not permitted by the Plan. The inapplicability of the Plan, particularly the first priority of Class A is further demonstrated by the treatment of the Bank of America's first deed of trust for $1,500,000, Class D, and a second deed of trust for $150,000, Class F, which were paid in full, with interest, without being subjected to expenses of administration. This, even though the terms of the Plan would have presumably made them as subject to Class A as Sells and Fields, Class F. We therefore conclude that payment to appellees under the plan, of proceeds claimed by appellants, was not warranted.

## IV. COMPENSATION UNDER THE CODE, § 506(c)

There remains the question of whether appellees could receive their attorney fees under § 506(c) which allows a trustee or debtor-in-possession to receive certain compensation at the expense of a secured creditor:

> "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of such property to the extent of any benefit to the holder of such claim."

This section codified the law in effect at the time the Code was drafted. H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 357; S.R. No. 95–989, 95th Cong., 2d Sess. (1970) 68, U.S.Code Cong. & Admin.News 1978 pp. 5787.

The issue here is whether appellee is entitled to be paid interim fees from a fund to which appellants' lien has attached and which may be insufficient to satisfy the claim of both the attorneys for the debtor and the secured creditor.

To prevail, appellees must satisfy the standards of § 506(c):

1. They may only receive the reasonable, necessary costs and expenses of preserving or disposing of the collateral and

2. Their recovery, at the expense of a creditor with a secured claim is limited "to the extent of any benefit to such creditor."

The first question is whether appellees' efforts may be equated with the cost of protecting and benefitting appellee's preserving interest in the collateral within the meaning of § 506(c). The cases indicate that the secured creditor may be charged for acts which directly protect or preserve the collateral in a specific and limited sense. In *First Western Savings & Loan Ass'n v. Anderson,* 252 F.2d 544 (9th Cir.1958) the Ninth Circuit listed the services which protected the property, which, as in the instant case, was a partially completed shopping center; the trustee was entitled to compensation only for the following:

1. Merchant patrol surveillance of the shopping center.

2. Efforts to keep part of the property occupied by renters during the usual business hours.

3. Minor repairs.

Other cases also indicate that the trustee (or debtor-in-possession) may encroach upon a fund to which a creditor's lien has been transferred only to the extent of the costs of selling the property and "the expense, if any, of preserving the encumbered property pending the sale." *Textile Banking Company v. Widener,* 265 F.2d 446, 453 (4th Cir. 1959). See also 4B *Collier* (14th Ed.) § 70.99 n. 38. The foregoing does not provide a basis for charging appellants with any allowance to appellees.

## V. COMPENSATION FOR GENERAL REPRESENTATION OF THE DEBTOR

### A.

The fees awarded in the instant case included compensation for charges in con-

nection with general bankruptcy matters together with billings in connection with the litigation involving the debtor and RCCC. Virtually all of the time expended and charges thereon was incurred prior to confirmation of the Plan and the subsequent sale. There is no basis in the record for compensating appellees for services relating to the sale.

■ With respect to the fees for general representation of the debtor in the bankruptcy proceedings, such fees may be paid at the expense of a secured creditor only where it is demonstrated that the secured creditor derived a benefit therefrom. The Ninth Circuit has held that "where the free assets involved in an unsuccessful reorganization proceeding are insufficient to cover allowances [to trustee and his attorney] the extent to which mortgaged property should be charged therewith rests within the sound discretion of the trial judge." *Silverstate Savings & Loan Ass'n v. Young*, 252 F.2d 236, 238–39 (9th Cir.1958) citing *First Western Savings and Loan Ass'n v. Anderson*, 252 F.2d 544 (9th Cir.1958). However, such recovery is limited under § 506(c) to the extent that the secured creditor benefitted from the services.

The *Anderson* court approved of allowances for services which directly preserved or protected the mortgaged property. In the instance case there are no findings with respect to how the general services of appellees, in their representation of the debtor in the bankruptcy, benefitted the appellants. Consequently, there is no basis in the record for upholding the award for services of general administrative character.

### B.

As indicated, a charge to a lien creditor requires demonstration that the collateral was served by way of either preservation or disposition such as sale. Would the thus far successful RCCC litigation fall within this category? It is doubtful, particularly in the circumstances of this case, but assuming, *arguendo*, that it is possible, what service was rendered by appellees which would clearly demonstrate a benefit to appellants?

Rockefeller, as general contractor for the shopping center of the debtor, filed a lien against the property for approximately $400,000. Appellees successfully litigated the validity of RCCC's lien and also obtained a judgment against RCCC for $78,359.00 plus $78,187.00 in attorneys' fees. The Bankruptcy Appellate Panels for the Ninth Circuit affirmed the trial court on all issues except the attorneys' fees.

BAP No. NC–81–1178 VEK,, Sept. 1982. Consequently, assuming RCCC does not appeal to the Ninth Circuit or that the decision is appealed and affirmed, there may be enough money in the estate to pay the appellants' claim and the fees of appellee. Conversely, if the judgment against RCCC is reversed, it would be impossible for appellee to demonstrate how their representation of the debtor in the litigation against RCCC conferred any benefit upon appellants.

Appellee, in asserting that appellant benefitted from its invalidation of RCCC's lien, disregards or minimizes the priority dispute between appellants and RCCC. In approving the Plan, counsel for appellants, on April 30, 1981, wrote counsel for RCCC that appellants accepted the plan

"with the understanding that the priority between RCCC and Sells and Fields will be determined pursuant to the applicable state law of the Bankruptcy Court. In other words, Sells and Fields are not bound by the priority set forth in the Plan as between RCCC and Sells and Fields."

A subsequent modification to the Plan provided that the relative positions of priority for classes F (Sells and Fields), G (RCCC) and H (various other lien claimants) were subject to litigation and determination by the court.

This dispute has been held in abeyance by the stipulation for sale entered into on June 11, 1981. E.R. 23. Appellees maintain that appellant's chances of prevailing against RCCC are poor and that but for their success, thus far, in eliminating RCCC's lien, appellant would receive little, if anything,

out of the proceeds of sale. This contention is based on assumption, not fact, insofar as the unresolved dispute is concerned. Moreover, appellees, in the Objections to Confirmation of (Amended) Plan by RCCC, filed May 1, 1981, argued at length that appellants' mortgage was superior to RCCC's claim of lien, stating (at p. 2):

"There are two substantial errors in Rockefeller's scheme of classification. First the deed of trust held by Fields and Sells is senior to Rockefeller, as Rockefeller initially acknowledged, having been executed and delivered before work commenced on the Shopping Center...."

This observation was gratuitous since appellees did not represent Fields and Sells. In any event, the Plan provided for payment in full, and further, Fields and Sells had stipulated that, if need be, their right to claim priority over RCCC would be preserved. Moreover, as a result of this understanding, this provision was preserved in the stipulation for sale approved by the court.

### C.

It may be observed that the theory and nature of the issues between RCCC and appellants relating to lien priority are of a different order than those involved in the breach of contract litigation between the debtor and RCCC. The debtor, in order to prevail and for it to receive any benefit for itself, let alone general creditors, had to engage in the litigation without regard to whether there would be a benefit to lien claimants.

The dispute between RCCC and appellants involved RCCC's contention that since the effective date of their lien related back to the date that they commenced work on the project, their lien was senior to that of appellants. Appellants, on the other hand, asserted that RCCC had knowledge of their lien before RCCC began work and that this fact meant that their lien was senior to RCCC's lien.

It is clear, therefore, that appellants had grounds for contesting the RCCC lien which were different from those put forward by the debtor and were available to it independent of action by the debtor. Appellants' dispute involved priority based on relatively narrow factual issues. The debtor's dispute involved the validity of RCCC's claim and a substantial counterclaim. The debtor contested RCCC's entitlement to any claim and was not directed to protection of nor disposition of the asset to which the disputed lien of RCCC attached. Appellee's efforts in this respect did not serve the collateral. The debtor litigated its case against RCCC for its own benefit. For there to be any chance for a successful reorganization *for the debtor,* Sonoma V had to eliminate RCCC's lien. It did not pursue the litigation with the purpose of sparing appellants the expense of litigation. In fact, Sonoma V also challenged, unsuccessfully, the validity of appellants' claim.

The basic applicable law, codified by § 506(c), is that for expenses of administration to be charged against property of a secured creditor, they must be reasonably and necessarily incurred in the "preserving or disposing of such property to the extent of any benefit to the holder of such claim." Appellees have not demonstrated that their services were reasonably and necessarily incurred and rendered for the benefit of the secured creditor.

REVERSED.