**In re PROTO–SPECIALTIES, INC., Debtor.**

**Bankruptcy No. B–83–2818–PHX–GBN.**

United States Bankruptcy Court, D. Arizona.

Oct. 1, 1984.

Susan G. Wintermute, Snell & Wilmer, Phoenix, Ariz., for CMD Southwest, Inc.

Jon N. Vogel, Scottsdale, Ariz., for trustee.

Dawn Stoll, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for Valley National Bank of Arizona.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for Small Business Administration.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Following a Court-authorized Trustee sale of certain of the debtor's equipment and machinery on May 3, 1984, secured creditors Small Business Administration ("SBA") and Valley National Bank of Arizona ("Bank") requested disbursement of sale proceeds.

Payment is also requested of proceeds from the Bank's collection of debtor's accounts receivable pursuant to an April 26, 1984 stipulated order lodged by that institution and the Trustee. The Trustee was appointed February 8, 1984, following conversion of debtor's voluntary Chapter 11

petition. Additionally, CMD Southwest, Inc. ("CMD"), debtor's landlord, has requested payment of unpaid rent as an administrative claim.

Unfortunately, the proceeds are insufficient to pay all claimants and the Trustee's administrative fees and costs. The problem is aggravated by the parties' failure, during pendency of the sale, to expressly agree as to the propriety and allocation of expenses incurred during this period.

Given this lack of a manifested agreement, the best the courts can do is rely on the fragile memory of witnesses and settled legal principles to impose a resolution. This may well result in rough justice. From this experience, hopefully all will learn to appreciate the efficacy of written understandings.

■ Taking the matters in reverse order, the motion of landlord CMD to receive unpaid rent as an administrative expense under § 506(c)[1] is denied for lack of standing. *In re New England Carpet Co.*, 28 B.R. 766, 771–72 (Bankr.D.Vt.1983); *In re Codesco*, 18 B.R. 225, 230 (Bankr.S.D.N.Y. 1982); *but cf. In re Manchester Hides*, 32 B.R. 629, 631–33 (Bankr.N.D.Iowa 1983). Further, even if CMD had standing to move for compensation under § 506(c), it executed a landlord's lien waiver subordinating to the Bank "all right of levy for rent or pasturage and any and all claims and demands of every kind against (the collateral) ... and all priority rights accruing to it by and through any and all liens of any nature...." Exhibit to Docket No. 106. It thus appears CMD waived "any and all claims and demands of every kind against (the collateral)."

■ Any such waiver, however, does not affect the *Trustee's* right for reimbursement of storage costs under § 506(c). *Matter of By the Sea Foods*, 30 B.R. 262, 265 (Bankr.M.D.Fla.1983).

As to the Trustee, § 506(c) expresses the equitable principle a lienholder may be charged with the reasonable costs and expenses incurred to preserve or dispose of collateral, to the extent the secured party is benefited. *Matter of Trim-X, Inc.*, 695 F.2d 296, 298–99 (7th Cir.1982). This equitable principle was recognized by our Circuit long before enactment of the present Code. *First Western Savings & Loan Ass'n v. Anderson*, 252 F.2d 544, 548 (9th Cir.1958). This is so "the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs." *In re Codesco*, 18 B.R., at 230.

■ The courts narrowly interpret "benefit" to the secured creditor. To establish benefit, the trustee must demonstrate in quantifiable terms he has expended funds "which directly protect and preserve the collateral." *In re Sonoma V*, 24 B.R. 600, 603 (9th Cir.B.A.P.1982); *In re Flagstaff Foodservice Corp.*, 29 B.R. 215, 219 (Bankr.S.D.N.Y.1983). Such encroachment on a secured creditor's collateral is to be determined upon the exercise of sound discretion. 24 B.R., at 604, *citing Silverstate Savings & Loan Ass'n v. Young*, 252 F.2d 236, 238–39 (9th Cir.1958); *Anderson, supra.*

Section 506(c) was not intended as a substitute for the recovery of normal administrative expenses from the debtor's estate. 11 U.S.C. § 503(b); *Brookfield Production Credit Ass'n v. Borron*, 738 F.2d 951 at 953 (8th Cir.1984).

The evidence concerning the parties' intent is cloudy. The Trustee feels he was "led to believe" his administrative fees would be paid by Bank and SBA officials. Debtor's counsel testified from notes he took at a December 27, 1983 meeting that both secured creditors agreed to share the rental costs of maintaining the collateral at CMD's premises to allow a bulk sale. This would eliminate difficulties inherent in moving large, computer-controlled items requiring extensive wiring. On cross-examination, counsel testified no specific monetary amount or time period was mentioned

---

1. CMD's original application did not seek authorization under authority of § 506. Its memorandum of September 5, 1984 cites that section as authority for its request.

in which this "50–50" allocation of rental costs would be shared. CMD apparently was not present at the meeting.

Bank Officer Campbell, not testifying from notes, recalls a December 27, 1983 discussion of rent but made no express agreement the Bank would pay storage costs.

■ Action by the Trustee to benefit the estate, although also of benefit to secured creditors, is insufficient to justify a § 506(c) award. *Brookfield Production Credit Ass'n, supra,* at 952. The effort and funds must be expended primarily and directly for the lienholders. *In re Sonoma V,* 24 B.R., at 603.

■ What is required is a manifested, objective act by the Trustee to establish a cleavage date after which the Trustee's efforts went only to preserving assets that were to go to the lienholder. *See, Matter of Trix-X, Inc.,* 695 F.2d, at 301 (expenses incurred prior to trustee's abandonment petition held estate liability; post-abandonment expenses to be paid by secured creditor). From the evidence presented, the first such manifested act appears to be the Trustee's notice of sale filed April 13, 1984. This sale ultimately created the fund to pay the lienholders. Docket No. 65.

■ Sale expenses will include reasonable storage costs provided by CMD from that date until the landlord regained sole possession. The rental rate specified in the lease is presumptively reasonable for purposes of determining an administrative claim. *In re Peninsula Gunite,* 24 B.R. 593, 595 (9th Cir.B.A.P.) (§ 503(b) claim). I have received no evidence convincing me the contract rate is unreasonable for § 506(c) purposes here. While the Trustee may not have utilized the entire leasehold for collateral storage, the landlord was precluded from leasing the unused portion to others.

I find no statutory support in § 506 for CMD's claim of 18% interest added to the rental charges.

There is also a dispute whether the Bank has proven entitlement to a § 507(b) priority claim for failure of adequate protection in an earlier cash collateral proceeding. 11 U.S.C. § 363(c). Valuation of such a claim does not appear useful as sale proceeds are not sufficient to pay the sale expenses and secured claims a higher priority.

The order of payment should run as follows:

1. The Trustee's costs directly associated with this particular sale, including CMD's storage costs from April 13 to the date it regained possession at the contract rate, but excluding interest. 11 U.S.C. § 506(c).

2. Superpriority secured claims, if any, granted under § 364(c).

3. Secured claims in order of priority.

4. Claims for failure of adequate protection under § 507(b).

5. Administrative expenses of the Trustee. 11 U.S.C. § 507(a)(1).

Because he is in the best position to determine sale costs, the Trustee will lodge and serve an order consistent with this memorandum. Pursuant to Rule 7052, *F.Bk.R.,* the above will serve as my findings and conclusions.