**In re BOB GRISSETT GOLF SHOPPES, INC., Debtor.**

**Bankruptcy No. 82–01428–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 25, 1985.

Stanley J. Samorajczyk, Hazel, Beckhorn & Hanes, Fairfax, Va., for Stanley Spoont, M.D.

John Thyden, Springfield, Va., for debtor.

Miller John Poppleton, Jr., Protas, Kay, Spivok & Protas, Arlington, Va., for landlord.

Gerald M. O'Donnell, Alexandria, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The issue to be determined here is whether, and to what extent, administrative expenses of the estate may be charged against a secured creditor's collateral.

▮ In general, only expenses incurred directly to preserve or dispose of the property may be charged against the secured creditor's collateral. Statutory authority for such charges is found in section 506(c) of the Bankruptcy Code. Particular charges must meet a three-prong test to determine their propriety in that the expenses must be; (1) necessary to preserve or dispose of the property; (2) of benefit to the secured creditor; and (3) reasonable. A broader range of charges may be authorized if the court finds the creditor either expressly or impliedly consented to the incurring of the expenses.

## STATEMENT OF THE LAW

▮ Payment of administrative expenses traditionally has been the responsibility of the debtor's estate, not its secured creditors. *In re Flagstaff Food Service Corporation*, 739 F.2d 73 (2d Cir.1984); *Matter of Trim-X, Inc.*, 695 F.2d 296 (7th Cir. 1982). A trustee has the option to abandon secured property to the lienholder as having no equity for the estate, but if the trustee elects to retain and sell such property "he cannot intrench upon the amount of the secured debt for the payment of any of the expenses of administration such as commissions and similar costs." *Textile Banking Company v. Widener*, 265 F.2d 446, 453 (4th Cir.1959).

▮ Some costs, however, may be shared with secured creditors pursuant to section 506(c) of the Bankruptcy Code. Section 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). This section permits costs to be charged against a secured party only "for acts which directly protect or preserve the collateral in a specified and limited sense." *In re Sonoma V*, 24 B.R. 600, 603 (Bankr. 9th Cir.1982). Conversely, the section protects the estate and its general creditors from the cost of preserving what is not theirs. *In re Codesco*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982).

▮ While the trustee, or other applicant, has the burden of proving the necessity, reasonableness and benefit to the secured creditor of all expenses to be paid from the creditor's collateral, *In re Flagstaff Foodservice Corporation*, 739 F.2d at 77; *Matter of Trim-X, Inc.*, 695 F.2d at 299, it is incumbent upon the Court to make affirmative findings concerning these elements before authorizing a charge against the collateral. *Matter of Trim-X, Inc.*, 695 F.2d at 299–302.

▮ The legislative history of section 506(c) states that the section "codifies current law". H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787. The purpose of the section is to allow for recovery of expenses from a secured party "[a]ny time the ... debtor-in-possession expends money to provide for the reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral...." 124 Cong.Rec.H. 11095 (daily ed. Sept. 28, 1978), reprinted in 3 App. *Collier on Bankruptcy*, IX–98 (15th ed. 1982); 124 Cong.Rec.S. 17411 (daily ed. Oct. 6, 1978), (reprinted in 3 App. *Collier on Bankruptcy*, X–24 (15th ed. 1982).

The congressional reports inhibit too expansive a reading of section 506(c) by noting expressly that *"recovery is limited to the extent of any benefit to the holder"* of the secured claim. H.R.Rep. No. 595 at 357; S.Rep. No. 989 at 68, reprinted in 1978 U.S.Code Cong. & Admin.News, 5854 and 6313 (emphasis added). This statement of legislative intent follows case law developed under the former Bankruptcy Act.

The Fifth Circuit, for example, had ruled that in proper circumstances "costs and expenses from which the mortgage benefitted or which might reasonably be expected to benefit the mortgagee, may in the discretion of the ... court be properly charged against the mortgaged property." *United States v. Henderson,* 274 F.2d 419, 423 (5th Cir.1959).

■ Since section 506(c) is a codification of pre-Code law, cases decided under the former Bankruptcy Act remain applicable to a determination of rights under the section. *See In re Korupp Associates, Inc.,* 30 B.R. 659, 662 (Bankr.D.Me.1983) and cases cited therein. The courts have discretion to determine when and how much recovery shall be allowed from a secured party. *First Western Savings and Loan Association v. Anderson,* 252 F.2d 544, 547 (9th Cir.1958).

■ Case law has established certain factors for evaluating alleged benefits flowing to the secured creditor from the particular expenses or activities. These factors encompass the following inquiries:

(1) Was there a reasonable expectation of consummating a reorganization plan which would have benefitted secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings?

(2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors?

(3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion?

(4) Were the secured creditors benefitted by anything which was done in the reorganization proceedings?

(5) Did the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee [or debtor-in-possession] therein?

(6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in the attempt to formulate an acceptable plan? *First Western Savings and Loan Association v. Anderson,* 252 F.2d at 548 n. 8. Other circuits have noted approval of this approach. *See In the Matter of Trim-X, Inc.,* 695 F.2d 296 (7th Cir.1982); *In re Colonial Realty Investment Co.,* 516 F.2d 154 (1st Cir.1975); *United States v. Henderson,* 274 F.2d 419 (5th Cir.1959).

Factor number (5), "consent" by the secured party, has generated much judicial discussion but little agreement concerning what actions on the part of the secured creditor will justify a finding of consent and trigger the imposition of a broader range of charges against the secured assets.

In *Robinson v. Dickey,* a Third Circuit decision, the court stated that if lienholders "expressly or impliedly consent to the expenditure of money by the trustee ... for the maintenance of the mortgaged property ... the expenses thus incurred must be paid by the lienholders." *Robinson v. Dickey,* 36 F.2d 147, 149 (3rd Cir.1930). The court accordingly approved charges against the property, a mine, for the expenses of keeping water pumped out of the mine. There was no question that the particular expenses were necessary to preserve the value of the mortgaged property.

■ When the requested charges against secured property include general administrative costs and attorney fees, however, "consent is not to be lightly inferred." *In the Matter of S & S Industries, Inc.,* 30 B.R. 395 (Bankr.E.D.Mich. 1983). In the *S & S* case, the court refused to impose upon the secured creditor's collateral funding of creditors' committee expenses. *Id.; see also In re Sonoma V,* 24 B.R. at 605; *In re Codesco, Inc.,* 18 B.R. at 230 (debtor's attorney's fees not chargeable to secured creditors.)

In *U.S. v. Henderson,* 274 F.2d 419 (5th Cir.1959), the debtor argued that the se-

cured creditor, the Small Business Administration, had consented to payment of administrative expenses from its collateral by failing to oppose the debtor's reorganization proceedings and by stating it might consider providing additional funds for the debtor. 274 F.2d at 421. The Fifth Circuit reversed a lower court order authorizing the charges and stated that the facts were "wholly insufficient to warrant a finding of consent." *Id.*

A distinction must be drawn between acts which evidence consent to bear the costs of reorganization proceedings and acts which merely evidence a willingness that such proceedings be conducted if others want them and if others bear the cost. Under the circumstances of the present case, the only inference which can be drawn from a failure to intervene and actively oppose reorganization is the inference of willingness to let those who desire and are willing to pay for the proceedings do so.

*Id.*

▪ The fact that the estate has no unencumbered funds from which to pay administrative expenses does not obligate a secured creditor to fund these expenses. The secured creditor, unless he consents, "cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in section 506(c)." *In the Matter of S & S Industries, Inc.*, 30 B.R. at 399.

▪ There are significant policy reasons for these rulings. To require a secured creditor to object to the incurrence of ordinary expenses of a reorganization proceeding in order to avoid exposure for payment of such expenses under section 506(c) would waste time and further burden the estate with the expense of opposing such objections. *In re Korupp Associates, Inc.*, 30 B.R. 659, 644 (Bankr.D.Me.1983). Section 506(c) never was intended to force secured creditors to become guarantors of administrative expenses. *Id.* at 662–64. Further,

if the court were to indiscriminately charge secured parties with the costs of administration, secured parties would refuse to cooperate in any proceeding and would immediately seek relief from stay. The secured parties are not to be penalized for the cooperation they provide which is essential to the debtor's reorganization attempt.

*Id.*

▪ When, as here, there are no unencumbered assets available to fund administrative expenses, the court should "balance the misfortune of having some allowances go unpaid against the possible inequity of charging them all against mortgaged property." *First Western Savings and Loan Association v. Anderson*, 252 F.2d at 548; *see also In re Hotel Associates, Inc.*, 6 B.R. 108 (Bankr.E.D.Pa.1980). Inevitably, the Court's allocations will yield no more than "rough justice." *In re Proto-Specialities, Inc.*, 43 B.R. 81, 83 (Bankr.D.Ariz. 1984).

The First Circuit applied the "balancing test" set forth in *First Western Savings and Loan Association v. Anderson*, 252 F.2d at 548 n. 8, and affirmed a District Court order which the First Circuit characterized as marking off "a tolerable middle ground." *In re Colonial Realty Investment Co.*, 516 F.2d at 159. The debtor-in-possession was permitted to use rents from income-producing properties to pay some expenses beyond those benefitting only the mortgage holders but not to treat the income as general assets of the estate. This limited incursion, the court stated, would further the debtor's rehabilitation while respecting the property rights of the secured creditors. *Id.* The order authorizing the use of rental income had been entered early in the reorganization proceeding when the debtor's prospects were difficult to assess and thus was comparable to an order conditioning the debtor's use of cash collateral under section 363(c)(1).

In a more recent case, a bankruptcy court found that the secured creditor had given implied consent to charges against its collateral when the creditor chose to move for appointment of a trustee rather than for relief from stay. *In re Hotel Associ-*

*ates, Inc.*, 6 B.R. 108, 109 (Bankr.E.D.Pa. 1980). The court found that the creditor knew or should have known that the debtor's estate was insubstantial apart from the secured property and, further, that by bringing about the appointment of the trustee, the creditor had "caused the expenses that the trustee is bound to incur." *Id.* at 111–12.

## STATEMENT OF FACTS

Sovran Bank, N.A. (hereafter "Sovran"), is the holder of two promissory notes executed by the debtor on June 22, 1981 and August 6, 1982. These notes are secured by all of the debtor's inventory, fixtures, equipment, accounts receivable, general intangibles, and the proceeds thereof. Sovran holds the notes as successor to Northern Virginia Bank and Virginia National Bank from whom the debtor borrowed the funds.

Simultaneously with the making of the first note, Stanley Spoont, M.D., an equity security holder of the debtor, executed a guarantee of Sovran's loans to the debtor. This guarantee, in turn, was secured by certain shares of stock owned by Spoont and delivered to Sovran. The debtor made some payments to Sovran on the first note but none on the second note. The total of its payments to Sovran was approximately $17,000.00. When the debtor defaulted on its payments, Sovran liquidated Spoont's collateral and applied the $131,167.37 in proceeds to reduce the debt.

The debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 5, 1982. On June 22, 1983 Sovran filed a Complaint for an Order Conditioning the Use of Cash Collateral, Inventory and Accounts Receivable, and Spoont subsequently intervened as a party plaintiff in that adversary proceeding. This Court entered a Consent Order Conditioning the Use of Cash Collateral on December 14, 1983.

Upon the separate applications of Sovran, Spoont and the United States Trustee, a trustee had been appointed on August 5, 1983. Among the reasons stated for requesting appointment of a trustee were the debtor's: failure to obtain approval of its disclosure statement and reorganization plan; failure to file financial reports; apparent inability to compile and provide financial data; failure to make payments to Sovran; failure to pursue recovery of preferential transfers; and use of Sovran's cash collateral without court authorization. Spoont's application stated further that Sovran had filed suit against him for payment of the remaining balance on the notes. Spoont's application clearly anticipated that a trustee would move promptly either to sell the debtor's business or liquidate its assets, thereby providing funds to pay Sovran.

In late November and early December of 1983 the trustee conducted a liquidation sale of the debtor's inventory, all of which was subject to Sovran's lien. This sale yielded approximately $82,000.00 in proceeds against a debt to Sovran in the amount of $98,507.69 upon which interest was continuing to accrue.

Following the liquidation sale, the trustee sold to Robert F. Grissett all remaining inventory for $7,500.00. This property subsequently was destroyed while in possession of a moving and storage company. The trustee is seeking an insurance recovery which will be subject to Sovran's lien as proceeds of secured property.

Although the debtor's tangible assets already had been liquidated by the trustee, the debtor and Sovran nevertheless endorsed a Consent Order Conditioning the Use of Cash Collateral which was entered by the Court on December 14, 1983. This order granted Sovran a postpetition lien on all the debtor's inventory, fixtures, equipment, accounts receivable, general intangibles and the proceeds thereof, and provided for the trustee to make monthly payments to Sovran in the amount of $3,333.33. However, it appears that no such payments ever were made.

On October 17, 1983, Carey Winston & Co. and Prudential Life Insurance Company (hereafter the "Landlord") made appli-

cation to the Court for payment of past due administrative rent in the amount of $31,572.10 for the period June through October 1983. This application was later amended after the debtor vacated its premises on December 15, 1983 to a full and final amount of $38,744.04. During the early months of this proceeding, the Landlord had received extra payments in excess of the monthly rent. Pursuant to agreement between the debtor and the Landlord, the Landlord applied these payments to the debtor's prepetition unpaid rent obligations. No court order authorizing said payments toward a pre-petition debt ever was sought by the parties. The total amount paid and applied to pre-petition debt was $8,587.72.

On February 16, 1984, Sovran and Spoont jointly filed an Application to Compel Payment to Secured Creditor to which John W. Thyden, attorney for the debtor and an administrative creditor for $27,243.28 in unpaid legal fees and expenses, filed an objection. Thyden previously had received $305.36 in expenses pursuant to an order entered February 7, 1983. Thyden, however, also had served for seven months as comptroller of the debtor during which time he drew a salary of $1,000.00 monthly in addition to billing the debtor for his services as an attorney.

At a hearing on these matters, the trustee set forth the following additional administrative expenses:

| | | |
|---|---|---|
| Gillman's trash collection service (2 mos.) | $ | 130.00 |
| Alarm service | | 104.00 |
| Barrington & Co. (repairs) | | 40.00 |
| VEPCO (electricity) | | 767.74 |
| Washington Gas Light Co. (gas) | | 156.21 |
| Chesapeake & Potomac Telephone Co. | | 313.35 |
| Customer claims (gift certificates, etc.) | | 2,066.64 |
| Federal withholding taxes (4 Quarter 1982) | | 5,051.12 |
| Federal Unemployment taxes (1983) | | 1,870.54 |
| Virginia Employment Commission (3 Quarter 1983) | | 9.95 |
| Virginia Sales and Use taxes (Nov. 1983) | | 404.31 |
| MacGregor—inventory | | 2,070.00 |
| Contact—inventory | | 851.66 |
| | | $13,835.52 |

In addition, the debtor's accountant has filed an application for payment of fees and expenses in the amount of $6,578.08. The accountant had received prior interim compensation and expenses in the amount of $9,497.48 pursuant to orders entered February 7 and May 10, 1983. The trustee stated that the Internal Revenue Service was claiming additional payroll taxes for the third and fourth quarters of 1983 in the amount of $3,215.99 which claim had not yet been substantiated.

The trustee also stated that he was holding $2,400.00 from sources other than the sale of the secured property, but otherwise held no unencumbered assets. It is unclear from the record whether the $82,000.00 held by the trustee at the time of the hearing included this $2,400.00. The trustee was pessimistic concerning further recovery of preferences because of lack of funds to employ counsel to pursue them. In particular, the trustee stated that a substantial claim against the wife of the debtor's principal, arising during the 90-day to one year pre-petition period of recoverability from insider transferees, would require proof of additional elements and the expenditure of significant attorney time.

Subsequently, the Court on November 9, 1984 entered judgment in the amount of $4,750.00 in the estate's preference action against Confidence Golf Company. This recovery, which would be subject to Sovran's lien, brings the amount potentially available to satisfy the lien to approximately $94,250.00. This still is less than the amount owed as of December 1, 1983. Spoont paid the remaining balance due to Sovran in June 1984.

On September 28, 1984, the Court entered an order dismissing Sovran as a party to the Application to Compel Payment to the Secured Creditor, which order expressly stated that the dismissal would "in no way impair or prejudice any rights which Stanley Spoont, M.D. may have to be subrogated to the claim of Sovran Bank." Subsequently counsel for the debtor filed an application to subordinate Spoont's

claim as subrogee of Sovran, which application has been denied by the Court.

Accordingly, Spoont now is the sole claimant under the pending Application to Compel Payment of Secured Creditor.

## THE CLAIMS

Sovran/Spoont admit that the following expenses could have been necessary to the preservation and sale of the property and thereby have benefitted the secured creditor:

| | |
|---|---|
| Gillman's Trash | $130.00 |
| Alarm Service | 104.00 |
| Barrington & Co. (repair bill) | 40.00 |
| Utility bills: | |
| VEPCO | 767.74 |
| WGL | 156.21 |
| C & P Telephone | 313.35 |

Furthermore, the reasonableness of the amount of these charges is not disputed. Accordingly, the Court finds that they were necessary, reasonable, benefitted the secured creditor, and may be paid from the secured creditor's collateral.

Sovran/Spoont further admit that continued use and occupancy of the leased premises constituted a direct and necessary benefit to the preservation and sale of the secured property. However, Sovran/Spoont dispute the Landlord's claim in two respects.

Sovran/Spoont first argue that the receipt of post-petition funds to pay pre-petition rent obligations without authorization from the Court was "improper," and that the amount of these payments should be deducted from the Landlord's claim.

Clearly, the agreement between the debtor-in-possession and Landlord for payment of additional monies to be applied to unpaid pre-petition rent obligations violates section 362(a) of the Bankruptcy Code. Further, as post-petition transfers of property of the estate not authorized by the Court, said transfers are avoidable under section 549(a). Moreover, section 502(d) requires that the court disallow the claim of any entity that has been the recipient of an avoidable transfer unless the entity has disgorged the property. The Landlord has not disgorged the $8,587.72 received from the debtor-in-possession.

The language of section 502(d) is mandatory. Accordingly, the Court must condition allowance of any claim for administrative rent upon the Landlord's disgorging of the unauthorized and avoidable post-petition transfers. As a practical matter, the Court will offset against the amount allowed as administrative rent the amount paid toward pre-petition rent.

The second basis upon which Sovran/Spoont object to Landlord's claim is that occupancy of the entire leased area was not necessary to preserve the collateral and was not reasonable under the circumstances. The basic rent for June 1983 was $5,581.94. This basic monthly rent rose to $6,440.78 for July through mid-December when the debtor vacated the premises. There were additional charges for lawn maintenance, snow removal and utilities.

Both Thyden and the trustee stated to the Court that they had attempted unsuccessfully to negotiate for a reduction of rented space. The Landlord maintains it is entitled to the full monthly rental because the trustee in fact used the entire space and did not relocate or move the inventory and fixtures into only a portion of the space. The Landlord further claims that the extra charges for lawn maintenance, snow removal, and utilities benefitted the secured creditor by providing "adequate retail premises" and, later, an "adequate facility" for storing and liquidating the collateral. Moreover, the Landlord argues, Sovran/Spoont's actions in permitting the debtor to operate instead of moving for relief from stay and repossessing the collateral caused rent to continue to accrue.

The trustee is liable for administrative rent on that portion of the leased property used and occupied by him for the benefit of the estate. The Court has a duty to make findings concerning the reasonable value for the use and occupancy of the premises. While the contract rent is presumptively the reasonable value for

such use and occupancy, the Court has discretion to fix the reasonable administrative rent. *Matter of Merchants Storage of Virginia, Inc.*, 15 B.R. 448 (Bankr.E.D.Va. 1981).

██ Under the circumstances of this case, and particularly in light of the Landlord's refusal to negotiate decreased space, the Court concludes that the contract rent is not the reasonable administrative rent. Rather, the amount of administrative rent should be reduced to reflect proportionately the square footage which was actually necessary to preserve the assets. The extra charges for lawn maintenance, snow removal, and related items should be reduced equivalently. Should the trustee and the Landlord be unable to agree on the amount of space actually necessary, the Court will hold a further hearing.

Sovran/Spoont do not admit any necessity or benefit to them arising from the claims for compensation by the debtor's attorney and the debtor's accountant, state and federal payroll taxes, sales taxes, customer claims (gift certificates, deposits, etc.), merchandise, or the trustee's commission. Nor do they expressly consent to them. Accordingly, the Court will analyze these expenses within the framework of the six factors enunciated in the *First Western Savings and Loan* case and balance the equities to determine the extent to which these expenses should be paid from the secured creditor's collateral.

### 1. *Reasonable Expectation of Successful Reorganization.*

██ In May 1983, the Court refused to approve the debtor's disclosure statement and plan for lack of sufficient financial data. At that time, the debtor was three months behind in the filing of monthly operating reports. When the reports were filed in July and August of 1983, they showed that the debtor had operated at a small profit during one month only and otherwise had suffered consistent and substantial losses. No amended disclosure statement ever was filed. The Court can only speculate whether the debtor may have had a reasonable expectation of successful reorganization at the outset of this case, but the hopelessness of the debtor's financial condition was apparent by the time the trustee was appointed in August 1983.

There is no justification for imposing charges beyond those appropriate in general bankruptcy proceedings.

### 2. *Services Rendered by Professionals.*

██ (a) Debtor's Attorney's Fees. Thyden's time records submitted with his application for compensation cover a period from a few weeks prior to the filing of the Chapter 11 petition through March 11, 1983. Virtually all of the time expended involved general representation of the debtor. There is no showing that any of the services directly benefitted the secured creditor.

Thyden has admitted that for a period of seven months, beginning pre-petition and extending into the Chapter 11 proceeding, he also served as comptroller of the debtor at a salary of $1,000.00 per month. Thyden stated to the Court that his duties as Comptroller consisted of meeting with the debtor's principal for an hour or two each week and signing the debtor's checks. Balancing the equities in the circumstances here, and noting in particular the number of hours billed for routine functions as the debtor's financial officer for which Thyden already has been compensated by salary, and the chronic and substantial operating losses reported by the debtor during this period ($18,035.00 in November 1982, $16,831.00 in January 1983, $11,621.00 in February 1983), the Court concludes that Thyden is not entitled to any further compensation.

Moreover, the receipt of a salary by Thyden was improper while he simultaneously was employed as the debtor's attorney. The debtor's attorney is entitled to compensation for the reasonable value of his services, but it is the Court that determines what is the reasonable value of the attorney's service, not the attorney or the debt-

or. Payment of compensation is, in all cases, subject to court approval. 11 U.S.C. § 329; 11 U.S.C. § 330.

The Court has withheld until today a ruling on Thyden's two applications for compensation for services as attorney for the debtor. These applications and the attached time records have been reviewed by the Court. Based upon these time records and upon Thyden's testimony concerning his duties as the debtor's comptroller, the Court makes the following rulings:

1. Any and all compensation for serving as the debtor's comptroller is denied.

2. Full and final compensation is approved in the amount of $5,000.00 for services performed as attorney for the debtor.

3. Thyden will be required to disgorge $2,000.00, which amount is equal to the difference between the amount allowed as compensation as the debtor's attorney and the total previously paid to him as salary.

(b) Debtor's Accountant's Fees. A review of the time records submitted by the accountant fails to show any direct benefit to the secured creditor. Many of the services also were routine bookkeeping matters for which compensation at a professional rate of $60.00 per hour is unreasonable. Accordingly, the Court will allow $2,000.00 final compensation to the debtor's accountant.

■ (c) The Trustee's Commission of Approximately $3,000.00. Section 326 of the Bankruptcy Code sets forth a schedule for computing the commission for the trustee based upon "all moneys disbursed or turned over in the case." 11 U.S.C. § 326. The legislative history, however, states that this section does not authorize such compensation but "simply fixes the maximum compensation of a trustee" and, further, that "the provision is also subject to the rights of the secured creditor under ... 506(c)." H.R.Rep. No. 95–595, 95th Con., 1st Sess. 437 (1977), U.S.Code Cong. & Admin.News 1978, p. 5824; S.Rep. No. 95–989, 95th Cong., 2d Sess. 37–38 (1978), re-

printed in 1978 U.S.Code Cong. & Admin. News at 5787, 6283, 6284.

■ Generally, when the trustee undertakes to sell fully encumbered property, or property with only slight equity, or when the trustee abandons property to a secured claimant, there is no actual or constructive disbursement and the trustee cannot collect compensation. *In re B & L Enterprises, Inc.*, 26 B.R. 220, 223, (Bankr.W.D.Ky. 1982). *See also Gugel v. New Orleans*, 239 Fed. 676 (5th Cir.1917); *In re Truitt*, 15 B.R. 169 (Bankr.N.D.Ga.1981).

■ In this case, both Sovran and Spoont, who was an equity security holder of the debtor and thus an "insider," knew or had reason to know that the debtor had no assets beyond those covered by Sovran's lien. Either Sovran or Spoont, or both, could have moved for relief from stay and proceeded immediately to liquidate. Both entities, however, chose instead to request the appointment of a trustee. Spoont's application indicates that he expected the trustee to sell or liquidate the debtor's business. If Sovran or Spoont had sought and obtained relief from the stay, either would have incurred expenses incident to liquidation. A secured creditor who knows the debtor's estate has no unencumbered assets and nevertheless moves for appointment of a trustee cannot by that means transfer to a third party, such as the trustee, the burden of financing the liquidation. *See, e.g., Brookfield Production Credit Association v. Borron*, 36 B.R. 445, 449 (E.D.Mo.1983), *aff'd*, 738 F.2d 951, 953 (8th Cir.1984); *In re Richards Pontiac, Inc.*, 24 B.R. 758, 760 (Bankr.E.D.N.Y.1982) and cases cited therein; *In re Hotel Associates, Inc.*, 6 B.R. 108, 109, 111–12 (Bankr.E.D. Pa.1980). Accordingly, the Court will allow the trustee's commission as a charge against the collateral here.

■ (d) Other General Administrative Expenses. The claims of $2,066.64 for customer deposits and $2,070.00 and $851.66 by MacGregor and Contact, respectively, for purchased inventory bear no relation to the preservation or sale of the secured

property. The trustee has made no showing of any sale of merchandise supplied by MacGregor and Contact and there is no basis for approving the claims as a charge on the secured creditor's proceeds.

The trustee has not shown any contribution to the preservation or disposition of the assets or any benefit to the secured creditor arising from the various tax claims. Accordingly, none will be allowed as a charge against the collateral here.

3. *Reasonable Diligence and Competence.* There has been no showing of reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to a close. Rather, the various administrative creditors behaved in a manner suggesting a conscious determination to prolong this case and run up administrative claims to the detriment of creditors.

4. *Benefit to Secured Creditor.* The claimants have not shown any action directly benefitting the secured creditor except the holding of the liquidation sale. The overdue financial reports of the debtor-in-possession reflect a pattern of delay which increased the claims for rent, utilities, payroll and taxes.

5. *Consent of Secured Creditor.* Both Sovran and Spoont knew or should have known that the debtor had no significant assets beyond those covered by Sovran's lien. The Court concludes that Sovran/Spoont, by moving for the appointment of a trustee rather than for relief from stay, acted in a manner consistent with a finding of implied consent to charges against the secured collateral such as reasonably would be expected to result from the appointment.

6. *Responsibility of Secured Creditor for Delays.* There is no evidence that Sovran/Spoont were responsible for delays in connection with these proceedings or were uncooperative in the development of a plan. Sovran objected to the disclosure statement and plan filed by the debtor-in-possession, but such action cannot be characterized as uncooperative or as causing delay. The debtor-in-possession had failed to meet the statutory requirements when it filed a disclosure statement and plan which lacked adequate information for proper evaluation of the plan by creditors. 11 U.S.C. § 1125(b).

## CONCLUSION

Accordingly, the Court will allow as charges against the secured creditor's collateral only those claims approved above. As to the cash collateral remaining in the trustee's hands after payment of said charges, the Application to Compel Payment to Secured Creditor is granted.